*Pro Se 1 2016*

_____FILED
_____LOGED
_____RECEIVED    **MAIL**

**JAN 09 2020**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                        DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

SETONDJI VIRGILE NAHUM

_____

_____,

              Plaintiff(s),

    v.

The Boeing Company, et al.

_____

_____,

              Defendant(s).

CASE NO. 2:19-cv-01114-BJP

AMENDED COMPLAINT PER
COURT ORDER GRANTING IN
PART PLAINTIFF'S MOTION TO
AMEND

AMENDED COMPLAINT

*Pro Se 7 2016*

COPY

**19 CV-01114** MJP   JUL 18 2019   SG

AT SEATTLE
CLERK U.S. DISTRICT COURT
BY                     WESTERN DISTRICT OF WASHINGTON
                                                    DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Setondji Virgile Nahum | CASE NO. _____ |
| _____ | [to be filled in by Clerk's Office] |
| _____. | COMPLAINT FOR EMPLOYMENT DISCRIMINATION |
| Plaintiff(s), | |
| v. | Jury Trial: ☐ Yes ☒ No |
| The Boeing Company | |
| Dillaman Jeffrey | |
| _____. | |
| Defendant(s). | |

## I.   THE PARTIES TO THIS COMPLAINT

A.   **Plaintiff(s)**

*Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.*

| | |
|---|---|
| Name | Setondji Virgile Nahum |
| Street Address | 18313 Ashworth Ave. N. |
| City and County | Shoreline and King |
| State and Zip Code | Washington and 98133 |
| Telephone Number | 206-595-6913 |

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 1

*Pro Se 7 2016*

Defendant No. 4

    Name _____

    Job or Title *(if known)* _____

    Street Address _____

    City and County _____

    State and Zip Code _____

    Telephone Number _____

C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is:

| | |
|---|---|
| Name | The Boeing Company |
| Street Address | 3003 Casino Road |
| City and County | Everett and Snohomish |
| State and Zip Code | Washington and 98204 |
| Telephone Number | 312-544-2000 |

## II.    BASIS FOR JURISDICTION

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

    *(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

    *(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 3

*Pro Se 7 2016*

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.
*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒ Other federal law *(specify the federal law)*:
25 CFR Section 11.448 Abuse of Office
Federal defamation laws, 28 U.S.C. Section 4101 (1)
_____

☐ Relevant state law *(specify, if known)*:
_____

☐ Relevant city or county law *(specify, if known)*:
_____

## III.    STATEMENT OF CLAIM

*Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.*

Claim 1, Claim 2,  Claim 3, Claim 4, Claim 5, Claim 6 and Claim 7 are stated on
_____
attached additional pages.
_____
_____

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐    Failure to hire me.

☒    Termination of my employment.

☐    Failure to promote me.

☐    Failure to accommodate my disability.

☒    Unequal terms and conditions of my employment.

☒    Retaliation.

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 4

**Claim 1**: **Racial discrimination**

**Basis for Jurisdiction**:  **Title VII of the Civil Rights Act of 1964**

The Boeing company racially discriminated against Setondji V. Nahum through direct and subtle on the job practices, treatments and occurrences. These events occurred in Everett, WA. The Boeing company supported acts and practices of direct and subtle racial discrimination by Boeing employees against Setondji V. Nahum throughout his employment with the Boeing company dating from February 16th, 2018 to May 13th, 2019. The Boeing company therefore violated Title VII of the Civil Rights Acts of 1964 through direct and subtle act of discrimination against Setondji V. Nahum who is an African and Black male.

The Boeing company has supported, enforced and directed multiple acts of direct and subtle racial discrimination against an African and Black male: Setondji V. Nahum. These racially motivated acts are illegals and specifically violates Title VII of the Civil Rights Act of 1964.Setondji V. Nahum's employment termination on 05/13/2019 were the results of such severe, direct, subtle, systemic acts of blatant racism that shall be considered hate crimes.

➢ Setondji V. Nahum is an African and Black male who is currently maintaining a grade of A+ throughout the first year of a master's in Aeronautics program with Embry-Riddle Aeronautical University-Worldwide.

**Claim 2**: Retaliation upon filing for racial discrimination with the U.S. Equal Employment

Opportunity Commission

**Basis for Jurisdiction**: Title VII of the Civil Rights Act of 1964

Setondji V. Nahum's employment was wrongfully terminated on 05/13/2019 by the Boeing company as retaliation for filing for racial discrimination with the Equal Employment Opportunity Commission. A series of retaliatory actions were wrongfully taken against Setondji V. Nahum after the filing. These events occurred in Everett, WA.

Upon Setondji V. Nahum filing a racial discrimination case with the U.S. Equal Employment Opportunity Commission on March 18, 2019, the Boeing company went on a rampage of retaliatory actions against Setondji V. Nahum. The Boeing company used false rumors, defamation, adverse performance feedback and evaluation, increased scrutiny and a "*fictitious*" corrective action to retaliate against Setondji V. Nahum and wrongfully terminate his employment. These actions from the Boeing company violates laws against retaliation for filing a racial discrimination case with the U.S. Equal Employment Opportunity Commission as specified in Title VII of the Civil Rights Act of 1964.

**Claim 3**: Wrongful termination through abuse of power and authority.

**Basis for Jurisdiction**: 25 CFR Section 11.448 Abuse of Office

The Boeing Company did not have the authority to issue an employment termination letter on 05/13/2019 to Setondji V. Nahum based on three "*fictitious*" corrective actions. These events occurred in Everett, WA. Issued on 09/04/2018, the first corrective action was invalid and was still pending dispute. Issued on 02/07/2019, the second corrective action was invalid and was still pending dispute through an appeal. Issued on 05/13/2019, the third Corrective action was invalid and provided no specific details.

The Washington State Employment Security Department quickly saw through the invalidity of Setondji V. Nahum's employment termination. After three weeks of investigations, the Washington State Employment Security Department ruled against the Boeing company on June 12th, 2019.  The Washington State Employment Security Department concluded on June 12th, 2019 that there was no misconduct on the part of Setondji V. Nahum as per Washington state laws RCW 50.20.066, RCW 50.04.294, WAC 192-150-200 and WAC 192-150-205. Through the actions of Dillaman Jeffrey who was the industrial engineering manager at the time of this adverse action and issued this wrongful termination, the Boeing company violated the federal abuse of office law 25 CFR Section 11.448

**Claim 4: Harassment**

**Basis for Jurisdiction: Title VII of the Civil Rights Act of 1964**

The Boeing company supported, encouraged and directed acts of harassment against an African and Black male: Setondji V. Nahum throughout his employment from February 2nd, 2018 to May 13th, 2019. These events occurred in Everett, WA. The Boeing company created a hostile, offensive and abusive work environment for Setondji V. Nahum using defamation, "*fictitious*" corrective actions, put-downs, tactfully discriminative work performance evaluations, excessive downtime, excessive mind-numbing repetitive excel data entry tasks, sarcastic insults and gossip as a tool for fear tactics, intimidation and threats. Therefore, the Boeing company violated Title VII of the Civil Rights Acts of 1964 through acts of harassment against Setondji V. Nahum who is an African and Black male.

➢ Setondji V. Nahum is an African and Black male who is currently maintaining a grade of A⁺ throughout the first year of a master's in Aeronautics program with Embry-Riddle Aeronautical University-Worldwide.

1  **Claim 5**: Libel and Defamation Per Se

2  **Basis for Jurisdiction**: Federal and State defamation laws

3      Setondji V. Nahum's employment was terminated on 05/13/2019 by the Boeing company

4  due to a series of false assertion of facts, communication of false assertions of facts and

5  misconstrue facts by the Boeing company that wrongfully put Setondji V. Nahum at fault.

6  Representatives of the Boeing company had knowledge of the falsity of the statement used to

7  generate fictitious corrective actions. Representatives of the Boeing company chose to recklessly

8  disregard the truth and used a series of false statements to generate fictitious actions for the sole

9  purpose of causing harm to the plaintiff.  This caused harm and damages to Setondji V. Nahum's

10  reputation. Through lies, false statements, misconstrue facts and defamation, the Boeing

11  company tactfully downgraded Setondji V. Nahum's work performance. Through defamation per

12  se and libel, the Boeing company generated "fictitious" corrective actions that resulted in

13  Setondji V. Nahum's employment termination. These defamatory statements were published to

14  multiple individuals and entities outside of the Boeing Company. For example, a letter dated July

15  12th 2019, proves that the Boeing Company continued to purposely disregard the truth and had

16  published such defamatory statements to a company known as "Talx UCM Services" located in

17  St Louis, MO. Please see Appendix E. These events occurred in Everett, WA.

18      The Washington State Employment Security Department saw through the Boeing's

19  company libel and defamation per se. After three weeks of investigations, the Washington State

20  Employment Security Department ruled against the Boeing company on June 12th, 2019.  The

21  Washington State Employment Security Department concluded on June 12th, 2019 that there was

22  no misconduct on the part of Setondji V. Nahum as per Washington state laws RCW 50.20.066,

23  RCW 50.04.294, WAC 192-150-200 and WAC 192-150-205. Please see appendix A for details

24  on such determination from the Washington State Employment Security Department.

AMENDED COMPLAINT-AMENDED CLAIM

**Claim 6**: Conspiracy Against Rights

**Basis for Jurisdiction**: Title 18 U.S.C. Section 241 and Title VII of the Civil Rights Act of 1964

The Boeing company violated Title 18 U.S.C. Section 241 and Title VII of the Civil Rights Act of 1964 by conspiring against Setondji V. Nahum's civil rights in attempting to deprive Setondji V. Nahum of his rights to seek employment with any employer. The Boeing company specified terms of segregation and discriminative terms by attempting to prevent Setondji V. Nahum from seeking or accepting employment directly (e.g., as an employee) or indirectly (e.g. including without limitation, as a contract hire, consultant, or leased employee) with the Boeing company with company specified by Boeing to include without limitation, any parent, sister, or subsidiary corporation. Representative of the Boeing company in Everett, WA communicated such terms to Setondji V. Nahum on June 21st, 2019 through an electronic mail attachment by Steve Spyridis a Contract Administrator of the Society of Professional Engineering Employees in Aerospace (SPEEA).

**<u>Claim 7</u>: Retaliation through act of discrimination and abuse of office for quality tasks and assignments performed in previous positions at Labinal Inc. and Sikorsky Aircraft.**

**<u>Basis for Jurisdiction</u>: 25 CFR Section 11.448 Abuse of Office and Title VII of the Civil Rights Act of 1964**

The Boeing company opted for acts of discrimination and abuse of power against Setondji V. Nahum as retaliation for quality violation findings and determinations Setondji V. Nahum had made through audits and quality assignments in previous roles at Labinal Inc between August 6th 2012 and March 18th 2019 and Sikorsky Aircraft between June 29th 2015 and July 26th 2016

Pro Se 7 2016

|   | ☒ | Other acts *(specify)*: | Title 18 U.S.C. Section 241 and Title VII of the Civil Rights Act of 1964 |

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

From 02/16/2018 to 05/13/2019

C.    I believe that defendant(s) *(check one)*:

        ☒    is/are still committing these acts against me.
        ☐    is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

        ☒    race            _____
        ☐    color           _____
        ☐    gender/sex      _____
        ☐    religion        _____
        ☐    national origin _____
        ☐    age *(year of birth)*    *(only when asserting
                                      a claim of age
                                      discrimination.)*
        ☐    disability or perceived disability *(specify disability)*
              _____

E.    The facts of my case are as follows.  Attach additional pages if needed.

        The facts pertaining claim1, claim2, claim3, claim4, claim 5, claim 6 and claim 7 are attached  on additional pages.

        _____

        _____

        *(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 5

**Facts for Claim1**: **Racial discrimination**

**Basis for Jurisdiction**:  **Title VII of the Civil Rights Act of 1964**

The Boeing company racially discriminated against Setondji V. Nahum through direct and subtle on the job practices, treatments and occurrences. The Boeing company supported acts and practices of direct and subtle racial discrimination by Boeing employees against Setondji V. Nahum throughout his employment with the Boeing company dating from February 16th, 2018 to May 13th, 2019. The Boeing company therefore violated Title VII of the Civil Rights Acts of 1964 through direct and subtle act of discrimination against Setondji V. Nahum who is an African and Black male.

❖ Setondji V. Nahum is an African and Black male who is currently maintaining a grade of A+ throughout the first year of a master's in Aeronautics program with Embry-Riddle Aeronautical University-Worldwide.

I.   02/16/2018 mark Setondji V. Nahum's first day at the Boeing company. He was initially assigned to an African manager. After approximately a month, Dillaman Jeffrey, a white manager replaced the African manager. This mark the beginning of racial discrimination acts against Setondji V. Nahum.

II.   As early as approximately March 27th ,2018 Setondji V. Nahum recognized the making of adverse conditions which included:
   • Exclusion from formal and informal networks
   • Denial of mentoring, effective onboarding, developmental opportunities such as effective training (as opposed to generic, irrelevant and introductory training) which were made available to others.

To prevent such, Setondji V. Nahum contacted both the white manager and the Hispanic team lead at the time of this occurrence to take the necessary steps to prevent such discriminative practices. Both individuals provided dismissive and maligned responses.

III.   On 09/04/2019, a "*fictitious*" corrective action was written against Setondji V. Nahum. Setondji V. Nahum, an African and Black male experienced at the hand of the white manager (Dillaman Jeffrey) and a white team lead a case of differential management practices through a deviation from written policies and standard practices when dealing with a racialized person. Just because Setondji V. Nahum is an African and Black male, the white manager at the time of this adverse action, Dillaman Jeffrey, opted to deem written policies, procedures and program control document irrelevant and inaccurate. Setondji V. Nahum had accurately completed an assignment as per instructions, procedure and Boeing's program control document. For the sole purpose of discriminating against Setondji V. Nahum, the white manager: Dillaman Jeffrey, declared all related instructions, procedures and Boeing's 777X control documentation to be inaccurate and incorrect. Dillaman Jeffrey's instructions was contradictory to written

instructions. In fact, Setondji V. Nahum efforts to understand this action led to work
instructions/procedure update.

- The Boeing company and the white manager: Dillaman Jeffrey, arrogantly
  followed up with a case of disproportionate blame for an incident against the
  African and Black male: Setondji V. Nahum. They wrote a "fictitious" corrective
  action against Setondji V. Nahum claiming he did not complete the assignment
  when in fact not only did Setondji V. Nahum complete the assignment, he had to
  re-do the assignment upon, the white manager: Dillaman Jeffrey, suddenly
  claiming that work instructions, procedure and Boeing's documented 777X
  control code map was inaccurate.

- Moreover, through a follow-up analysis conducted by Setondji V. Nahum, it was
  determined that the white manager: Dillaman Jeffrey's claims were false.
  Assignment completion revealed that the installation plan was completed in-shop
  and therefore as per instructions, No PPCR was required. The Boeing company
  and Dillaman Jeffrey had opted for bullish practices which not only violated
  internal Boeing policies and procedure but also did such practices form the
  Boeing company and Dillaman Jeffrey violated the United States of America anti-
  discrimination laws.

- Setondji V. Nahum also hereby state that through this adverse action and because
  Setondji V. Nahum is an African and Black male, the Boeing company and the
  white manager: Dillaman Jeffrey, treated this normal difference of opinion as
  confrontational or insubordinate. In matter of fact and per all written instructions,
  and documentation pertaining to the assignment, Setondji V. Nahum had
  completed the assignment as per all documented instructions, procedures, and
  control documentation.

IV.    On 11/14/ 2018 the white manager: Dillaman Jeffrey, stated during a yearly performance
       review that the African and Black male: Setondji V. Nahum, was reassigned to a smaller
       pre-assembly shop because a white employee refused to work with the African and Black
       male employee: Setondji V. Nahum. Although to this day no reasons were ever provided
       as to why the white employee refused to work with the black employee, the fact and the
       matter is that the Boeing company encourage and supported discriminatory and
       detrimental acts against Setondji V. Nahum by accommodating acts of prejudice and
       racism. Furthermore, Setondji V. Nahum pointed out differential and racist management
       practices and treatments by allowing, supporting and celebrating white employee's
       refusal to work with an African and Black male. Meanwhile when the African and Black
       is immediately terminated if he refused to violate documented work instructions,
       procedures, policies, regulations and quality standards.

V.     On 12/2018 and 06/2018, the African and Black male: Setondji V. Nahum,  experienced
       the racial discriminatory practice of penalizing a racialized person for allegedly failing to
       get along with co-workers, when in fact one of the reasons for the tension is the racially
       discriminatory attitude and behavior of the co-workers and manager.

- On 12/2018 and 06/2018 the white manager: Dillaman Jeffrey stated that: *Although the African and black male: Setondji V. Nahum had completed all assigned work and Setondji V. Nahum's work performance met expectation, Setondji V. Nahum work performance shall be downgraded allegedly because unspecified co-workers and manager reported not getting along with Setondji V. Nahum.*

- An attempt by Setondji V. Nahum to request further clarification led to the following statement from Brian White: a white 2nd level manager at the time of the adverse action:*" All managers and co-workers on the shop floor are afraid of you"*. The African and Black male, Setondji V. Nahum asked *"Why? It does not make any sense. Are you afraid of me?"* The white 2nd level manager at the time of the occurrence responded: *"No, I am not afraid. I have this Boeing badge"*

- In reality, no one was afraid of the African and Black male: Setondji V. Nahum on the shop floor. This was a sad case where the Boeing company opted to use racial stigma to strengthen subtle racial discrimination acts again the African and Black male: Setondji V. Nahum.

- To make matter worse, the African and Black male: Setondji V. Nahum, was often referred to as *"a rat, a dog and a carpet to be stepped on with approval from management"* These individuals were not afraid of Setondji V. Nahum. Rather, they enjoyed living racist fantasies through derogatory, direct and subtle racially discriminative and insulting acts against Setondji V. Nahum.

- Setondji V. Nahum further points to the Boeing Company respondent statement to the Equal Employment Opportunity commission where the Boeing company state the following; *"Upon arrival of a new Industrial Engineer (IE), the Boeing company elected to assign Setondji V. Nahum's area to this new Industrial Engineer (IE) because it was stable"* The area's schedule was stable because Setondji V. Nahum stabilized it through his work ethics and approach to work challenges. Please note that it is the excellence in Mr. Nahum's work that allowed for such area to be overtaken by a new Industrial Engineer even at such an early stage of the program. This is further proof of the hypocrisy and injustice that Setondji Nahum has been a victim of. Setondji V. Nahum finds it very telling that despite all attempts to discredit his work and defame his character, The Boeing company contradicts itself by admitting the excellent quality and excellent work performance of Setondji V. Nahum despite challenges, discrimination and harassment. The Boeing Company respondent statement to the Equal Employment Opportunity Commission and Setondji V. Nahum's response to the Boeing Company are provided to the court in **appendix B**.

VI.   On 02/07/2019 the Boeing Company approved discriminatory acts against the African and Black male: Setondji V. Nahum through a "*fictitious*" corrective action when the African and Black male was experiencing cases of:

- Differential management practices through excessive monitoring and documentation
- Deviation from written policies and standard practices when dealing with a racialized person
- Disproportionate blame for an incident
- Treating normal differences of opinion as confrontational or insubordinate when involved with racialized persons
- Characterizing normal communication from racialized persons as rude or aggressive
  - It was alleged that 01/15/2019 the African and Black male: Setondji Nahum did not complete an assigned task while the request was a violation of internal work instructions and procedure. The white manager: Dillaman Jeffrey, simply wanted to duplicate his discriminative acts that led to adverse actions on 09/04/2018. Setondji V. Nahum had already completed the assigned as per written work instructions and procedures and received the relevant shop manager's approval to complete the tasks. Dillaman Jeffrey, the white manager brought an argumentative and disrespectful approach to the issue and seeking to yet again deviate from work instructions and procedure since the African and Black male had completed the task. The white manager's sole purpose was to discriminate.

  - It was alleged that on 01/04/2019 Setondji did not complete an assignment while Setondji V. Nahum completed such assignment after ensuring the white manager was aware that his request was unrealistic and unfeasible as per the assigned shop lead. Setondji V. Nahum provided accurate feedback but was forced to complete work with inaccurate data and irrelevant inputs just to please this white manager. This turned out to be a waste of time and efforts as often experienced by Setondji V. Nahum throughout the course of his employment with the Boeing company.  The white manager opted to characterized Setondji V. Nahum's feedback as rude, aggressive and insubordinate even though the white manager was clueless about the needs of the shop, the capabilities of the shop and provided inaccurate and irrelevant data to work with.

  - It was alleged that Setondji V. Nahum did not complete assignments pertaining to a pre-assembly shop. The African and Black male had completed all assignment upon ensuring a level of concurrence between all relevant parties. This specific shop: the "feederline shop" was in violation of multiple internal policies and procedures as well as potentially Federal Aviation Administration procedures and recommendations. This

was due to a workaround establish to address program and logistics issues that management had yet to find a solution for. Setondji V. Nahum was never told of such violations and neither was he inform of such workaround.

Knowing the complex dynamics that this created, the white manager kept assigning unrealistic assignment, making unrealistic request because the required data to complete such assignment was unavailable. Upon feedback from the African and Black male, the white manager would embrace acts of discrimination by characterizing normal communications as rude, aggressive and insubordinate. Furthermore, the White manager will treat the African and Black male as responsible for program issues, logistics issues and quality violations issues that in fact are issues for the white manager and his superiors to address. Such discriminatory acts were only reserved for the African and Black male: Setondji V. Nahum.

🔸 It was alleged through this "*fictious*" corrective action that Setondji V. Nahum did not attend a meeting. There was no meeting and no such meeting was ever scheduled or discussed. Upon request for clarification, the African and Black male: Setondji V. Nahum was characterized as sick, rude and insubordinate. Such discriminatory practices were only reserved for the African and Black male: Setondji V. Nahum.

🔸 The African and Black male: Setondji V. Nahum was consistently assigned less desirables job duties and "*false*" projects. Although Setondji V. Nahum was a 2nd level Industrial Engineer with a degree in Aerospace Engineering and approximately 8 years of work experience, Setondji V. Nahum was constantly assigned excessive mind numbing and repetitive excel basic data entry tasks. Setondji V. Nahum was often assigned undesired project with no need for analysis or undesired project with unavailable or inaccurate measures and variables.

🔸 On 05/13/2019, a continuous pattern of the above described discrimination acts and practices and racial profiling led to a third "fictitious" corrective action against the African and Black male: Setondji V. Nahum. These acts of racial discrimination against Setondji V. Nahum led to a termination of Setondji V. Nahum's employment on 05/13/2019. This third "fictitious" corrective action was issued for allegedly failing to comply with management to do a series of job expected of Setondji V. Nahum as an industrial engineer. To this day, this makes no sense to Setondji V. Nahum. Please first note the very vague and confusing terms of this "fictitious" corrective action. Moreover, Setondji V. Nahum had at the time just completed a major crew cycling project that highlighted issues and needs of the assigned

manufacturing shop. Setondji V. Nahum also incorporated an innovative method that consisted of using recovery plan timelines to estimate crew cycling needs. This had the merit of providing a more realistic estimate of the shop needs due to build delays. Each assigned task was completed by Setondji V. Nahum. In fact, Setondji V. Nahum was ahead by approximately three months in terms of assembly scheduling tasks that was essentially his role. There were no uncompleted tasks or pending actions. There was even an excessive downtime due to a lack of work. This "*fictitious*" corrective action represented the result of nothing but racial hatred because Setondji V. Nahum is an African and Black male. Through the white manager: Dillaman Jeffrey, the Boeing company deviated from written policies and standard practices by not taking responsibilities for company's shortcomings, management shortcomings and programs shortcomings. The Boeing company deviated from written policies and standard practices by opting to discriminate against Setondji V. Nahum by not acknowledging his work and instead blame the African and Black male for program and management issues that is out of his control.

Setondji V. Nahum find it necessary to state the following:

"*Finally, it is important to note that persons who reasonably believe they are being racially profiled can be expected to find the experience upsetting and might well react in an angry and verbally aggressive way manner.*" Through the action of the white manager, the Boeing company often wanted to frustrate the African and black male through continuous discriminative acts to the point where such angry and verbally aggressive outburst will occur.

"*A citizen who honestly and reasonably believes that he or she is being treated unjustly is entitled to protest vigorously, as long as there is no resort to violence to accompany words. Tribunals have even stated that a person's use of abusive language in these circumstances cannot form the basis for further differential treatment*". Setondji V. Nahum reference the above statement to the court because Setondji V. Nahum considers this civil suit as the beginning of his vigorous and legal protest.

## Conclusion

The Boeing company have supported, enforced and directed multiple acts of direct and subtle racial discrimination against an African and Black male: Setondji V. Nahum. These racially motivated acts are illegals and specifically violates Title VII of the Civil Rights Act of 1964. Setondji V. Nahum's employment termination on 05/13/2019 were the results of such severe, direct, subtle, systemic acts of blatant racism that shall be considered hate crimes.

**Facts for Claim 2**: Retaliation upon filing for a racial discrimination charge with the U.S. Equal Employment Opportunity Commission

**Basis for Jurisdiction**: Title VII of the Civil Rights Act of 1964

Setondji V. Nahum's employment was terminated as retaliation for filing for racial discrimination with the Equal Employment Opportunity Commission. A series of retaliatory actions were wrongfully taken against Setondji V. Nahum after the filing.

I.   On March 18th, 2019, Setondji V. Nahum filed a racial discrimination case with the Equal Employment Opportunity Commission (E.E.O.C.)

II.  On 03/27/2019, I was notified of false rumors by Steve Spyridis through a phone call on my Boeing provided phone number. Steve Spyridis was the SPEEA Union contract administrator at the time of the adverse action. It was alleged by an unspecified Industrial Engineering manager who was with the Boeing Company at the time that: "Setondji V. Nahum did not complete a crew cycling task, Setondji V. Nahum did not complete an assembly completion date estimation tasks, Setondji V. Nahum did not complete unspecified set of tasks. The Boeing Company opted for defamation as a tool for retaliation.

       ⬥ Setondji V. Nahum clearly responded that all assigned tasks had been completed. Setondji V. Nahum provided proof of this work. This was not shocking to Setondji V. Nahum but rather perplexing since he had just provided management with a requested PowerPoint presentation along with root cause analysis step that highlighted issues with the assigned manufacturing shop and provided solutions for resolving these issues. At this specific time, Setondji V. Nahum also noticed that he had resolved within three days all issues reported by the assigned manufacturing shop as specified within the manufacturing issue resolution instructions.

       ⬥ On a lesser extent, Steve Spyridis also mention on 03/27/2019 rumors of vulgar behavior during a presentation made to an unspecified individual who was at the time an industrial engineering manager with the Boeing Company. The details of such vulgar behavior were not provided but Setondji V. Nahum noticed that the Boeing company was opting for retaliation through defamation and vilification using lies based on racial stigma and prejudice among other things. This allegation was very perplexing to Setondji V. Nahum since he had just presented what Setondji believed to be useful insights that highlighted Industrial Engineering management misconceptions and misinformation about the issues affecting the assigned manufacturing shop. The information presented by Setondji V. Nahum simply highlighted measured issues and feedback provided by the mechanics, electricians and the mechanics/electrician lead and manager of the assigned manufacturing shop.

Nevertheless, these false rumors continued to be spread, and such gossips took center stage in the workplace.

III.   On March 22nd, 2019, Dillaman Jeffrey who was an industrial engineering manager at the time of this occurrence provided negative performance feedback. This performance feedback did not reflect Setondji V. Nahum exceptional and exemplary work performance. This occurrence was very telling of the negative and ill-minded intentions of Dillaman Jeffrey because the lead of the manufacturing shop assigned to Setondji V. Nahum had just taken the time to explain to all parties on March 21st, 2019 the real issues affecting the shop. Steven Simpkins, the lead of the assigned manufacturing shop, took the time to highlight program, logistics and managerial issues that were the real issues adversely impacting the assigned shop.

⬦   Dillaman Jeffrey opted to continued with his campaign of lies, defamation and discriminatory acts by issuing negative work performance feedback that was contradicted by Steven Simpkins, the assigned manufacturing shop lead just the previous day on March 21nd 2019. Dillaman Jeffrey opted to wrongfully blame Setondji V. Nahum for industrial manufacturing management shortcomings, program issues, logistics issues and the limited resources provided to the manufacturing shop.

⬦   The facts were evident.  Setondji V. Nahum had taken control of his assigned Industrial engineering tasks and submitted excellent work. Setondji V. Nahum may have even been ahead of his counterparts since he was the only Industrial engineer in the group at the time of this adverse action to have completed a complex precedence network diagram for his assigned manufacturing shop. Nevertheless, this pattern of unjust performance feedback and evaluation took center stage in the workplace and became a tool for retaliation, defamation, intimidation, harassment, discrimination and acts of racism and hatred.

IV.   Approximately on April 2nd, 2019, Setondji V. Nahum was referred to as a rat, a dog and carpet for the manufacturing floor to abuse and step on with approval from management.

⬦   Setondji V. Nahum hopes that industrial engineers in his group and other individuals working on the manufacturing floor that made such statements, will have the courage to step up in court and own up to such statements and behavior. Setondji V. Nahum also sincerely hopes that such individuals will have the courage to step up in court and provide specific reasons for their actions. Setondji V. Nahum also hopes that such individuals, supported by the Boeing company, will have the courage to bring their gossips to court and make such statements in a court of law.

V.   Approximately on April 2nd, 2019, Dillaman Jeffrey called for meeting for the purpose of increased scrutiny. SPEAA union representative attended this meeting on the phone and

in person. Dillaman Jeffrey, who had allegedly received the support of the Boeing company, specify terms with a lack of transparency. Setondji V. Nahum requested transparency and proposed that every single item that was presented as an issue be logged in a SharePoint file accessible to all relevant parties. Such issues shall be stamped by relevant parties upon successful completion. This was proposed by Setondji V. Nahum because of the continuously defamatory nature of Dillaman Jeffrey actions. It was to no surprise to Setondji V. Nahum that the Boeing company refused to specify transparent terms. The truth was not the Boeing company's objective. Retaliation through adverse action was unfortunately the Boeing company's objective.

VI.    On April 8th, 2019, Setondji V. Nahum was contacted by a human resources employee of the Boeing company in a factfinding team. This individual was Lima Kim. Lima Kim stated that it was reported that Setondji V. Nahum had not complied with several management requests to do a series of jobs expected of Setondji V. Nahum as an industrial engineer. No specifics were provided, and this accusation was kept vague. Setondji V. Nahum quickly notice this adverse action as part of the Boeing company retaliatory agenda

- The Boeing company used this false accusation to strengthen their defamation tactics and issue a "*fictitious*" corrective action to retaliate against Setondji V. Nahum for filing a racial discrimination charge with the U.S. Equal Employment Opportunity Commission.

- Even though Setondji V. Nahum provided irrefutable materials as proofs that all assigned tasks were completed, the Boeing company opted to support these false allegations and a "*fictitious* "corrective action was written against Setondji V. Nahum. This "*fictitious*" corrective action was used as an excuse for a wrongful termination of employment.

**Conclusion**

Upon Setondji V. Nahum filing a racial discrimination case with the U.S. Equal Employment Opportunity Commission on March 18, 2019, the Boeing company went on a rampage of retaliatory actions against Setondji V. Nahum. The Boeing company used false rumors, defamation, adverse performance feedback and evaluation, increased scrutiny and a "*fictitious*" corrective action to retaliate against Setondji V. Nahum and wrongfully terminate his employment. These actions from the Boeing company violates laws against retaliation for filing a racial discrimination case with the U.S. Equal Employment Opportunity Commission as specified in Title VII of the Civil Rights Act of 1964.

**Facts for claim 3**: **Wrongful termination through abuse of power and authority.**

**Basis for Jurisdiction**: **25 CFR Section 11.448 Abuse of Office**

My employment termination was based on receiving three "*fictitious*" corrective actions for allegedly not completing a task/failing to comply with management request and for work not meeting management expectation.

I. On June 12th, 2019, the Washington State Employment Security Department ruled against the Boeing Company. After three weeks of investigations, the Washington State Employment Security Department concluded that there was no misconduct by Setondji V. Nahum as per Washington state laws RCW 50.20.066, RCW50.04.294, WAC 192-150-200 and WAC 192-150-205.

II. On 09/04/2019, the first "fictitious" corrective action was issued for failing to complete a requested task. Setondji V. Nahum never agreed and never signed the corrective action form. This corrective action is invalid because the requested task was completed. The requested task was to write a PPCR which violates internal process, procedures, regulations and specified work instructions. Setondji V. Nahum took the necessary steps to ensure concurrence between responsible parties as well as ensuring compliance with work instructions, quality standards and process control documentations including the 777X Control Code Map. Setondji V. NAHUM actions led to a process update that provided an improved procedure for writing PPCR(s).

     ⬥ At the time of Setondji V. Nahum's termination this "*fictitious*" corrective action was still under dispute. A grievance filed by the SPEAA union was still pending. The SPEAA union board specified to Setondji V. Nahum during a conference call that this specific corrective action was invalid. The SPEAA union board ruled that this corrective action is to be negated upon supplying them with an official copy of the completed task. An official copy of the PPCR, which is the completed task, was sent to SPEAA and the SPEAA board through Steve Spyridis who was the SPEAA union contract administrator.

   Based on this, the first corrective action was invalid but also still under dispute.

III. On 02/07/2019, the second "fictitious" corrective action was issued for allegedly failing to comply with management direction and expectations in completing tasks. Setondji V. NAHUM was wrongfully subjected to five days of time off without pay and a written notice. This "fictitious" corrective action was the result of a collusion based on misconstrue facts and defamation. Each assigned task was completed. Setondji V. NAHUM was tactfully assigned a shop which was in violation of internal process, procedures and quality regulations due to personnel, parts and logistics constraints. This yielded a complex communication situation where Setondji V. Nahum had to work with discording instructions from stakeholders with no official authority to complete the assembly. Setondji V. Nahum tried his best to keep the peace by taking the necessary

actions to ensure a level of concurrence between relevant parties in the interest of compliance with process instructions and quality regulations.

- In this specific case, please first note the vague and confusing terms used to issue this second "fictitious" corrective action. Setondji V. Nahum completed all assigned tasks. Setondji V. Nahum went above and beyond to ensure concurrence with discording stakeholders. This second *"fictitious"* corrective action against Setondji V. Nahum was nothing but premeditated defamation. Moreover, this second *"fictitious"* corrective action was also still pending dispute at the time of Setondji V. Nahum's employment termination. A grievance was filed against this second *"fictitious"* corrective action by the SPEAA union.
  On April 4th, 2019, upon a rejection of the grievance from the Boeing company Setondji V. Nahum filed an appeal and appear in front of the SPEAA board through a video conference. This appeal decision was still pending at the time of Setondji V. Nahum's termination. This means that the second *"fictitious"* corrective action was invalid and was also still under dispute at the time of Setondji V. Nahum's employment termination.

IV.    On 05/13/2019, a third "fictitious" corrective action was issued to Setondji V. Nahum and cumulated in an employment termination on 05/13/2019 as well. This third "fictitious" corrective action was issued for allegedly failing to comply with management to do a series of job expected of Setondji V. Nahum as an industrial engineer. To this day, this makes no sense to Setondji V. Nahum.

- Please first note the very vague and confusing terms of this "fictitious" corrective action. Moreover, Setondji V. Nahum had at the time just completed a major crew cycling project that highlighted issues and needs of the assigned manufacturing shop. Setondji V. Nahum also incorporated an innovative method that consisted of using recovery plan timelines to estimate crew cycling needs. This had the merit of providing a more realistic estimate of the shop needs due to build delays. Each assigned task was completed by Setondji V. Nahum. In fact, Setondji V. Nahum was ahead by approximately three months in terms of assembly scheduling tasks that was essentially his role. There were no uncompleted tasks or pending actions. There was even an excessive downtime due to a lack of work. This *"fictitious"* corrective action represented nothing but defamation because Setondji V. Nahum completed all assigned tasks. This third *'fictitious"* corrective action was also invalid. It was also wrongfully compounded with two previous invalid actions which validity was still under dispute at the time of Setondji V Nahum's employment termination.
- Based on this, Dillaman Jeffrey which was the Industrial Manager at the time, did not have the authority to issue an employment termination based on three consecutives "fictitious" corrective actions.

## **Conclusion**

The Boeing Company did not have the authority to issue an employment termination letter based on three "*fictitious*" corrective actions. The first corrective action was invalid and still pending dispute. The second corrective action was invalid and still pending dispute through an appeal. The third Corrective action was invalid and provided no specific details. The Washington State Employment Security Department quickly saw through the invalidity of Setondji V. Nahum's employment termination. After three weeks of investigations, the Washington State Employment Security Department ruled against the Boeing company on June 12th, 2019. The Washington State Employment Security Department concluded on June 12th, 2019 that there was no misconduct on the part of Setondji V. Nahum as per Washington state laws RCW 50.20.066, RCW 50.04.294, WAC 192-150-200 and WAC 192-150-205. Through the actions of Dillaman Jeffrey who was the industrial engineering manager at the time of this adverse action and issued this wrongful termination, the Boeing company violated the federal abuse of office law 25 CFR Section 11.448

**Facts for claim 4: Harassment**

**Basis for Jurisdiction: Title VII of the Civil Rights Act of 1964**

The Boeing company supported, encouraged and directed acts of harassment against an African and Black male: Setondji V. Nahum throughout his employment from February 2nd, 2018 to May 13th, 2019. The Boeing company created a hostile, offensive and abusive work environment for Setondji V. Nahum using defamation, *"fictitious"* corrective actions, put-downs, tactfully discriminative work performance evaluations, excessive downtime, excessive mind-numbing repetitive excel data entry tasks, sarcastic insults and gossip as a tool for fear tactics, intimidation and threats. Therefore, the Boeing company violated Title VII of the Civil Rights Acts of 1964 through acts of harassment against Setondji V. Nahum who is an African and Black male.

➢ Setondji V. Nahum is an African and Black male who is currently maintaining a grade of A+ throughout the first year of a master's in Aeronautics program with Embry-Riddle Aeronautical University-Worldwide.

I.   Throughout his employment from 02/16/2018 to 05/13/2019, Setondji V. Nahum was often referred to as *"a fraud, a drug dealer, a rat, a dog, a slave worker to be sold, a carpet to be stepped on with approval from management, a dead horse"*. Setondji V. Nahum wishes to hereby offer the opportunity to co-workers and management that used such terms to have the courage to come to court and take responsibility for such statements and behavior. These insults created an offensive and abusive work environment.

II.  On 09/04/2018, 02/07/2019 and 05/13/2019, the Boeing company used three *"fictitious"* corrective action as a fear tactic for intimidation, threats and put down in order to harass an African and Black male: Setondji V. Nahum. These *"fictitious"* corrective actions were a product of defamation per se and libel that led to a hostile and abusive work environment. These *"fictitious"* corrective actions were used as a basis for a wrongful termination of Setondji V. Nahum's employment.

III. Throughout Setondji V. Nahum's employment from 02/16/2018 to 05/13/2019, the Boeing company used excessive downtime, excessive mind-numbing repetitive excel data entry tasks, excessive repetitive tasks ensuring overexposure to computer's blue light, *"false"* projects, contradictory instructions and requests for "impossible tasks", third party intrusion in computer and internet network system in order to create torturous work conditions as well as strain and harm Setondji V. Nahum's mind and mental health. The Boeing company combined these adverse actions with racially discriminatory acts against Setondji V. Nahum to cause mental distress and harm Setondji V. Nahum's health.

IV.     The Boeing company created further abusive working conditions for Setondji V. Nahum
        through tactfully discriminative work performance, evaluation and feedback by
        downgrading Setondji V. Nahum performance for issues caused by management
        shortcomings, programs non-conformances, logistics issues, program deficiencies,
        communication deficiencies between Industrial Engineering Managers and
        Manufacturing managers. They often opted for dismissive and disrespectful attitude and
        feedback upon provided with accurate and effective data when proposed or presented by
        the African and Black male: Setondji V. Nahum

V.      Throughout his employment from 02/16/2018 to 05/13/2019, the Boeing company often
        made a mockery of Setondji V. Nahum by constantly changing input data for tasks and
        projects right after Setondji V. Nahum submitted tasks and assignment. This became a
        tact and an expectation for work to be constantly and purposelessly re-done repeatedly
        right after submittal of tasks. Please note that it was not a standard case of adjusting work
        or adapting to changing dynamics of manufacturing. Through the assigned white
        manager: Dillaman Jeffrey, at the time of these adverse actions, the Boeing company
        deliberately engaged in these acts for the sole purpose of harassing an African and black
        male: Setondji V. Nahum and causing mental distress.

VI.     Elements of claim 1, claim 2, claim 3, claim 4, claim 5, and claim 7 constitute details of
        acts of harassment by the Boeing company toward an African and black male.

## Conclusion

The Boeing company have supported, encouraged and directed multiple acts of harassment an
African and Black male: Setondji V. Nahum. These racially motivated acts are illegals and
specifically violates Title VII of the Civil Rights Act of 1964. Setondji V. Nahum's employment
termination on 05/13/2019 were the results of such severe, direct, subtle, systemic acts of blatant
harassment that shall be considered hate crimes.

*Pro Se 1 2016*

1    **Claim 5**: Libel and Defamation Per Se

2    **Basis for Jurisdiction**: Federal and WA State defamation laws

3        Setondji V. Nahum's employment was terminated on 05/13/2019 by the Boeing company

4    due to a series of false assertion of facts, communication of false assertions of facts and

5    misconstrue facts by the Boeing company that wrongfully put Setondji V. Nahum at fault.

6    Representatives of the Boeing company had knowledge of the falsity of the statement used to

7    generate fictitious corrective actions. Representatives of the Boeing company chose to recklessly

8    disregard the truth and used a series of false statements to generate fictitious actions for the sole

9    purpose of causing harm to the plaintiff.  This caused harm and damages to Setondji V. Nahum's

10   reputation. Through lies, false statements, misconstrue facts and defamation, the Boeing

11   company also tactfully downgraded Setondji V. Nahum's work performance. Through

12   defamation per se and libel, the Boeing company generated "fictitious" corrective actions that

13   resulted in Setondji V. Nahum's employment termination. These defamatory statements were

14   published to multiple individuals and entities outside of the Boeing Company. For example, a

15   letter dated July 12th, 2019, proves that the Boeing Company continued to purposely disregard

16   the truth and had published such defamatory statements to a company known as "Talx UCM

17   Services" located in St Louis, MO. Please see Appendix E. These events occurred in Everett,

18   WA.

19        The Washington State Employment Security Department saw through the Boeing's

20   company libel and defamation per se. After three weeks of investigations, the Washington State

21   Employment Security Department ruled against the Boeing company on June 12th, 2019.  The

22   Washington State Employment Security Department concluded on June 12th, 2019 that there was

23   no misconduct on the part of Setondji V. Nahum as per Washington state laws RCW 50.20.066,

24

1    RCW 50.04.294, WAC 192-150-200 and WAC 192-150-205. Please see appendix A for details

2    on such determination from the Washington State Employment Security Department.

3         As a basis for Setondji V. Nahum's employment termination, the Boeing company used a

4    series of "*fictitious*" misconduct claims based on lies and misconstrue facts stating that Setondji

5    V. Nahum either did not complete assigned industrial engineering tasks or failed to comply with

6    "*vague*" management requests. On June 12th, 2019, the Washington State Employment Security

7    Department saw through the libel and defamation per se of the Boeing company and ruled

8    against the Boeing Company. After three weeks of investigations, the Washington State

9    Employment Security Department concluded that there was no misconduct by Setondji V.

10   Nahum as per Washington state laws RCW 50.20.066, RCW50.04.294, WAC 192-150-200 and

11   WAC 192-150-205.  The details of such determination from the Washington State Employment

12   Security Department is made available to the court in Appendix A.

13        On 09/04/2019, the first "fictitious" corrective action was issued for failing to complete a

14   requested task. Setondji V. Nahum never agreed and never signed the corrective action form.

15   This corrective action is invalid because the requested task was completed. The requested task

16   was to write a PPCR which violates internal process, procedures, regulations and specified work

17   instructions. Setondji V. Nahum took the necessary steps to ensure concurrence between

18   responsible parties as well as ensuring compliance with work instructions, quality standards and

19   process control documentations including the 777X Control Code Map. Setondji V. NAHUM

20   actions led to a process update that provided an improved procedure for writing PPCR(s).

21   Nevertheless, the Boeing company wrongfully wrote a "*fictitious*" corrective action against

22   Setondji V. Nahum for allegedly failing to comply with management expectation by not writing

23   the requested PPCR. This "fictitious" corrective action based on lies and misconstrue facts was

24   used as a basis for Setondji V. Nahum's employment termination. The Boeing company

AMENDED COMPLAINT – FACTS FOR CLAIM 5

*Pro Se 1 2016*

wrongfully wrote a "fictitious" corrective action against Setondji V. Nahum for not completing an assignment that he completed. This "fictitious" corrective action constitute defamation per se and libel. It was used as a basis to terminate Setondji V. Nahum employment with the Boeing company.

On 02/07/2019, the second "fictitious" corrective action was issued for allegedly failing to comply with management direction and expectations in completing tasks. Setondji V. NAHUM was wrongfully subjected to five days of time off without pay and a written notice. This "fictitious" corrective action was the result of a collusion based on misconstrue facts and defamation. Each assigned task was completed. Setondji V. NAHUM was tactfully assigned a shop which was in violation of internal process, procedures and quality regulations due to personnel, parts and logistics constraints. This yielded a complex communication situation where Setondji V. Nahum had to work with discording instructions from stakeholders with no official authority to complete the assembly. Setondji V. Nahum tried his best to keep the peace by taking the necessary actions to ensure a level of concurrence between relevant parties in the interest of compliance with process instructions and quality regulations. In this specific case, please first note the vague and confusing terms used to issue this second "fictitious" corrective action. Setondji V. Nahum completed all assigned tasks. Setondji V. Nahum went above and beyond to ensure concurrence with discording stakeholders. This second "*fictitious*" corrective action against Setondji V. Nahum was nothing but premeditated defamation. The Boeing company wrongfully wrote a "fictitious" corrective action against Setondji V. Nahum for not completing an assignment that he completed. This "fictitious" corrective action constitute defamation per se and libel. It was used as a basis to terminate Setondji V. Nahum employment with the Boeing company.

AMENDED COMPLAINT – FACTS FOR CLAIM 5

1    On 05/13/2019, a third "fictitious" corrective action was issued to Setondji V. Nahum and

2    cumulated in an employment termination on 05/13/2019 as well. This third "fictitious" corrective

3    action was issued for allegedly failing to comply with management to do a series of job expected

4    of Setondji V. Nahum as an industrial engineer. To this day, this makes no sense to Setondji V.

5    Nahum. Please first note the very vague and confusing terms of this "fictitious" corrective action.

6    Moreover, Setondji V.  Nahum had at the time just completed a major crew cycling project that

7    highlighted issues and needs of the assigned manufacturing shop. Setondji V. Nahum also

8    incorporated an innovative method that consisted of using recovery plan timelines to estimate

9    crew cycling needs. This had the merit of providing a more realistic estimate f the shop needs

10    due to build delays. Each assigned task was completed by Setondji V. Nahum. In fact, Setondji

11    V. Nahum was ahead by approximately three months in terms of assembly scheduling tasks that

12    was essentially his role. There were no uncompleted tasks or pending actions. There was even an

13    excessive downtime due to a lack of work. This "*fictitious*" corrective action represented nothing

14    but defamation per se and libel because Setondji V. Nahum completed all assigned tasks. The

15    Boeing company wrongfully wrote a "fictitious" corrective action against Setondji V. Nahum for

16    not completing an assignment that he completed. This "fictitious" corrective action constitute

17    defamation per se and libel. It was used as a basis to terminate Setondji V. Nahum employment

18    with the Boeing company

19        The defendants knew the falsity of statements being made against the plaintiff.

20    The defendants purposely lied and opted to disregards the truth so as to maliciously move

21    forward with their premeditated actions to harm the plaintiff. The defamatory statements were

22    used to generate "fictious" corrective actions against the plaintiffs. This action led to the

23    wrongful termination of the plaintiff's employment. The defendants published such false

24    statements to multiple individuals and entities outside of the Boeing Company. For example, a

AMENDED COMPLAINT – FACTS FOR CLAIM 5

1    letter dated July 12th, 2019, proves that the Boeing Company continued to purposely disregard

2    the truth and had published such defamatory statements to a company known as "Talx UCM

3    Services" located in St Louis, MO. Please see Appendix E. These events occurred in Everett,

4    WA.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

AMENDED COMPLAINT – FACTS FOR CLAIM 5

**Facts for claim 6**: Conspiracy Against Rights

**Basis for Jurisdiction**: Title 18 U.S.C. Section 241 and Title VII of the Civil Rights Act of 1964

> The Boeing company violated Title 18 U.S.C. Section 241 and Title VII of the Civil Rights Act of 1964 by conspiring against Setondji V. Nahum's civil rights in attempting to deprive Setondji V. Nahum of his rights to seek employment with any employer. The Boeing company specified terms of segregation and discriminative terms by attempting to prevent Setondji V. Nahum from seeking or accepting employment directly (e.g., as an employee) or indirectly (e.g. including without limitation, as a contract hire, consultant, or leased employee) with the Boeing company with company specified by Boeing to include without limitation, any parent, sister, or subsidiary corporation.

I.     On June 21st, 2019, Setondji V. Nahum was emailed a potentially illegal settlement and release agreement terms which constituted a conspiracy against Setondji V. Nahum's rights as per title 18 U.S.C. Section 241. The specified terms also violated Setondji V. Nahum's rights under the Civil Rights Act of 1964.

II.    The potentially illegal settlement and release agreement document sent by the Boeing company to Setondji V. Nahum is provided to the court in appendix D as further proof of ill-intent, tactful segregation, discriminative and illegal practices.

> ⚓ Term 3 of this potentially illegal settlement and release agreement provided by the Boeing company is provided below:
> *"Employee agrees that he will not at any time in the future seek or accept employment with the company either directly (e.g., as an employee) or indirectly (e.g. including, without limitation, as a contract hire, consultant, or leased employee). For the purposes of this paragraph, "Company" includes, without limitation, any parent, sister, or subsidiary corporation. Employee waives any and all rights under the Company-Union collective bargaining agreement related to his/her return to Company employment."*

**Conclusion**

The Boeing company conspired against Setondji V. Nahum's civil rights by attempting to deprive Setondji V. Nahum of his rights to seek employment with any employer. The Boeing company specified terms of segregation and discrimination by attempting to prevent Setondji V. Nahum from seeking or accepting employment with any employer.

**Facts for claim 7**: Retaliation through act of discrimination and abuse of office for quality tasks and assignments performed in previous positions at Labinal Inc. and Sikorsky Aircraft.

**Basis for Jurisdiction**: 25 CFR Section 11.448 Abuse of Office and Title VII of the Civil Rights Act of 1964.  United States of America's Federal Abuse of Office Laws, State of WA Abuse of office laws.

The Boeing company opted for acts of discrimination and abuse of power against Setondji V. Nahum as retaliation for quality violation findings and determinations Setondji V. Nahum had made through audits and quality assignments in previous roles at Labinal Inc. and Sikorsky Aircraft.

I.  Setondji V. Nahum was required by the Boeing Company to submit a skills rating based on current and past experiences including specific details on work and assignments performed. Setondji V. Nahum included all relevant tasks and assignment performed to generate an accurate rating. Upon including previous quality tasks that revealed major quality and design violations from the Boeing 787 programs, the Boeing company opted to immediately retaliate against Setondji V. Nahum through acts of discrimination and abuse of power.

- The Boeing company immediately followed up on Setondji V. Nahum's skills ratings with a 2nd fictitious corrective action full of false allegations based on lies and misconstrue facts.

- On 02/07/2019 the Boeing Company approved discriminatory acts against the African and Black male: Setondji V. Nahum through a "*fictitious*" corrective action when the African and Black male was experiencing cases of:

  - Differential management practices through excessive monitoring and documentation
  - Deviation from written policies and standard practices when dealing with a racialized person
  - Disproportionate blame for an incident
  - Treating normal differences of opinion as confrontational or insubordinate when involved with racialized persons
  - Characterizing normal communication from racialized persons as rude or aggressive

- It was alleged that 01/15/2019 the African and Black male: Setondji Nahum did not complete an assigned task while the request was a violation of internal work instructions and procedure. The white manager: Dillaman Jeffrey, simply wanted to duplicate his discriminative acts that led to adverse actions on 09/04/2018. Setondji V. Nahum had already completed the assigned as per written work instructions and procedures and received the relevant shop manager's approval to complete the tasks. Dillaman Jeffrey, the white manager brought an argumentative and

disrespectful approach to the issue and seeking to yet again deviate from work instructions and procedure since the African and Black male had completed the task. The white manager's sole purpose was to discriminate.

♣ It was alleged that on 01/04/2019 Setondji did not complete an assignment while Setondji V. Nahum completed such assignment after ensuring the white manager was aware that his request was unrealistic and unfeasible as per the assigned shop lead. Setondji V. Nahum provided accurate feedback but was forced to complete work with inaccurate data and irrelevant inputs just to please this white manager. This turned out to be a waste of time and efforts as often experienced by Setondji V. Nahum throughout the course of his employment with the Boeing company. The white manager opted to characterized Setondji V. Nahum's feedback as rude, aggressive and insubordinate even though the white manager was clueless about the needs of the shop, the capabilities of the shop and provided inaccurate and irrelevant data to work with.

♣ It was alleged that Setondji V. Nahum did not complete assignments pertaining to a pre-assembly shop. The African and Black male had completed all assignment upon ensuring a level of concurrence between all relevant parties. This specific shop: the "feederline shop" was in violation of multiple internal policies and procedures as well as potentially Federal Aviation Administration procedures and recommendations. This was due to a workaround establish to address program and logistics issues that management had yet to find a solution for. Setondji V. Nahum was never told of such violations and neither was he inform of such workaround.
Knowing the complex dynamics that this created, the white manager kept assigning unrealistic assignment, making unrealistic request because the required data to complete such assignment was unavailable. Upon feedback from the African and Black male, the white manager would embrace acts of discrimination by characterizing normal communications as rude, aggressive and insubordinate. Furthermore, the White manager will treat the African and Black male as responsible for program issues, logistics issues and quality violations issues that in fact are issues for the white manager and his superiors to address. Such discriminatory acts were only reserved for the African and Black male: Setondji V. Nahum.

♣ It was alleged through this "*fictious*" corrective action that Setondji V. Nahum did not attend a meeting. There was no meeting and no such meeting was ever scheduled or discussed. Upon request for clarification, the African and Black male: Setondji V. Nahum was characterized as sick,

rude and insubordinate. Such discriminatory practices were only reserved
for the African and Black male: Setondji V. Nahum.

🔹 The African and Black male: Setondji V. Nahum was consistently
assigned less desirables job duties and "*false*" projects. Although Setondji
V. Nahum was a 2nd level Industrial Engineer with a degree in Aerospace
Engineering and approximately 8 years of work experience, Setondji V.
Nahum was constantly assigned excessive mind numbing and repetitive
excel basic data entry tasks. Setondji V. Nahum was often assigned
undesired project with no need for analysis or undesired project with
unavailable or inaccurate measures and variables.

Please see below work performed and communicated quality findings that led to management
discontent, retaliation, discrimination, abuse of office, sabotage and torts from previous
employers. It is important to note that quality audits performed for the Boeing 787 program at
Labinal Inc. was always mentioned as a reason for retaliation in the positions specified below.

II.   **2012 to 2014**: Setondji V. Nahum worked for the Boeing 787 program as a contractor
through his Tools and Process Engineer I position with Labinal Inc. from August
2012 to March 2014. Through Internal audits and quality assignments, Setondji V.
Nahum communicated multiple adverse findings for the Boeing 787 Program which
include:

🔹 Dynamics wiring, wire support and wire support stack-up which violates
Federal Aviation Administration regulations and internal Boeing 787 Design
Guides. This violation represents a serious risk to aircraft passengers
🔹 Defective Electrical Integration Panels. This violation represents a serious risk
to aircraft passengers
🔹 Violations of multiple Federal Aviation Administration and Boeing design
requirements
🔹 Retrofit Parts
🔹 Violation of ITAR regulations by the Information Technology infrastructure,
the Tools and Process Infrastructure, the employees accounts and onboarding
infrastructure.
🔹 Violation of Boeing quality policies, Labinal quality policies and Federal
Aviation Administration policies and requirements by the Tools & Process
Infrastructure
🔹 Multiple violations of company procedures and customers' requirements

Please note that Setondji V. Nahum was required to perform these audits and quality tasks. Setondji V. Nahum rightfully issued multiple corrective actions aimed at addressing the quality issues.

III.  **2015 to 2016**: Setondji V. Nahum worked multiple programs for Sikorsky Aircraft where he was yet again required to conduct quality projects and assignments.

Through such quality assignment, Setondji V. Nahum communicated multiple adverse findings which included multiple assembly issues, violations of standards, violations of policies and procedures.

## <u>Conclusion</u>

The Boeing Company opted to retaliate against Setondji V. Nahum for work performed in previous roles with past employer because Setondji V. Nahum revealed through quality audits and assignment multiple serious quality violations, design and manufacturing issues that led to multiple corrective actions. In doing such, the Boeing company violated 25 CFR Section 11.448 Abuse of Office and Title VII of the Civil Rights Act of 1964.

- ♣ *Setondji V. Nahum would like to hereby respectfully encourage and sensitize the United States Federal court and the justice system to share these facts with the relevant legal officials for an investigation of the Boeing company and Safran Labinal for the serious quality violations and audits finding dating from August 2012 to March 2014.*
- ♣ *Setondji V. Nahum is available to provide further details on these quality violations and audits findings for the sake of passenger's safety throughout the lifecycle of the aircraft.*

*Pro Se 7 2016*

## IV.    EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity

Commission or my Equal Employment Opportunity counselor regarding the defendant's

alleged discriminatory conduct on *(date)*

<u>March 18th 2018</u>

_____

_____

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☒    issued a Notice of Right to Sue letter, which I
received on *(date)*
<u>May 30th 2019</u>

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment
Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity

Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.
☐    less than 60 days have elapsed.

## V.    RELIEF

*State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do
not make legal arguments.  Include any basis for claiming that the wrongs alleged are
continuing at the present time.  Include the amounts of any actual damages claimed for the acts
alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed,
the amounts, and the reasons you claim you are entitled to actual or punitive money damages.*

Setondji V. Nahum requests first and foremost that the Boeing Company admit publicly and in writing wrongdoing
against Setondji V. Nahum including at least racial discrimination, harassment, defamation  per se and Libel,
Conspiracy against rights, Threats, Blackmailing, violation of privacy and retaliation for quality assignments completed
as a contractor between August 2012 and March 2014.
Setondji V. Nahum requests that the Boeing Company and any other pertaining Boeing employees have the courage to
bring forth to court all and every "gossip" spread as a basis for defamation or be forever liable for any and every
defamation statement made against Setondji V. Nahum through any platform at any location.

Setondji V. Nahum requests compensation including financial compensation as defined by law for every single adverse
actions taken against him. Setondji V. Nahum requests back pay, front pay, lost benefits, out-of-pocket losses, pain and
suffering, injunctive relief, punitive damages, and attorney's fees and costs ( if any)

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To:  **Setondji V. Nahum**<br>18313 Ashworth Ave. N.<br>Shoreline, WA 98133 | From:  **Seattle Field Office**<br>909 First Avenue<br>Suite 400<br>Seattle, WA 98104-1061 |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **551-2019-01088** | **Elizabeth Kidd,**<br>**Investigator** | **(206) 220-6866** |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_(signature)_  for

**Nancy A. Sienko,**
**Director**

5/30/2019
(Date Mailed)

Enclosures(s)

cc:  **Catherine A. Diga**
**Global EEO Compliance Specialist**
**Global Diversity & Inclusion**
**5000 E. McDowell Rd**
**M510-A106**
**Mesa, AZ 85215**

Pro Se 7 2016

## VI.    CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:  1/10/2020

Signature of Plaintiff  

Printed Name of Plaintiff  SETONJI V. NAHUM

Date of signing:  

Signature of Plaintiff  

Printed Name of Plaintiff  

Date of signing:  

Signature of Plaintiff  

Printed Name of Plaintiff  

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 7

# APPENDIX A

**≡ Employment Security Department**
WASHINGTON STATE
P.O. Box 9046, Olympia, WA 98507

Date: Jun 12 2019
Letter ID: L0009084324
Claimant ID: DM74GR

SETONDJI NAHUM
18313 ASHWORTH AVE N
SHORELINE WA  98133-4522

Dear SETONDJI NAHUM:                              Separation from a job-12304017

We made a decision about your unemployment benefits claim based on information we have at this time.

**We approved your unemployment benefits starting May 12 2019 as long as you otherwise qualify.**

You or your employer, THE BOEING COMPANY, said you were fired. We decided that your actions were not misconduct because of the reason(s) below.
- Your employer fired you for a reason that we don't consider misconduct.

The laws that apply are RCW 50.20.066, RCW 50.04.294, WAC 192-150-200 and WAC 192-150-205.

If we need to consider other questions about your claim, we'll send you separate letters to address each issue.

**You can appeal.**
You can appeal this decision if you disagree with it. The people or businesses listed below also can appeal the decision. We'll notify you if they do.

We sent a copy of this letter to:

SETONDJI NAHUM 18313 ASHWORTH AVE N SHORELINE WA 98133-4522,
THE BOEING COMPANY C/O TALX UCM SERVICES INC PO BOX 283 SAINT LOUIS MO 63166-0283

**What you need to do:**
- Read this entire letter carefully and decide if you want to appeal. You have until Jul 12 2019 to appeal.
- If we approved your benefits, or if we denied them and you decide to appeal, continue to submit weekly claims for weeks you want to receive benefits. We'll decide if you're qualified to receive those benefits.

Search more than 60,000 Washington jobs on WorkSourceWA.com. Visit WorkSource for free employment workshops and expert job-hunting advice.
Read the Handbook for Unemployed Workers at esd.wa.gov to find everything you need to know about benefits, including training for a new career.



# APPENDIX B

The Boeing Company
5000 E. McDowell Road
Mesa, AZ 85215-9707

May 09, 2019



VIA EEOC Digital Charge System

Mr. Fernando Chiqui
U.S. Equal Employment Opportunity Commission
Seattle Field Office
909 First Avenue Ste. 400
Seattle, WA 98104-1061

Re:    Setondji Nahum. vs. Boeing
       EEOC No. 551-2019-01088

Dear Mr. Chiqui:

The Boeing Company ("Boeing") submits the following in response to the above-referenced Charge of Discrimination filed by Setondji Nahum.[1]  In his Charge Mr. Nahum alleges that Boeing discriminated against him based on his race (African-American) by treating him less favorably than employees outside of his protected class.  More specifically, Mr. Nahum alleges that he was unfairly written up (issued corrective action) for minor issues that others were not written up for.  He further alleges that he was marked down on his midyear performance evaluation for having disputes with other employees despite management being unable to provide documentation or identify specific incidents to support this and he was reassigned to another area because coworkers were afraid to work with him    Mr. Nahum alleges that these actions by Boeing are discriminatory in violation of Title VII of the Civil Rights Act of 1964, as amended.

As set forth more fully below, Boeing adamantly denies Mr. Nahum's allegation that he has been treated differently based on his race and will provide substantive evidence supporting all corrective action decisions related to Mr. Nahum, actions taken without regard to Mr. Nahum's race or any other EEO protected factor.  This documentation will also support the ratings assigned to Mr. Nahum during his 2018 mid-year and 2018 year-end performance evaluation.  Based on the evidence, Boeing respectfully requests the EEOC dismiss the Charge with a "no cause" finding.

**I.    Boeing strictly prohibits discrimination based upon any protected categories**

Boeing POL-5, "Equal Employment Opportunity," prohibits discrimination based on any protected category, including race.  This policy applies to all terms and conditions of employment, to include corrective action and performance reviews (Attachment 1).

**II.   Mr. Nahum's work history**

Boeing hired Mr. Nahum on February 16, 2018 as an Industrial Engineer Level 2, the position he remains in today.  Throughout his employment with Boeing, the terms and conditions of Mr. Nahum's employment have been governed by a Collective Bargaining Agreement (CBA) between Boeing and the Society of Professional Engineering Employees in Aerospace (SPEEA). A copy of Mr. Nahum's work history is attached (Attachment 2).

---

[1] Please note that this letter and the enclosed information is based upon an investigation of the facts set forth in Mr. Nahum's Charge of Discrimination and is in response to the general nature of the allegations. By submitting this information, Boeing in no way waives the right to present new or additional facts or arguments based on subsequently acquired information or evidence.  This letter is not intended to be used as evidence of any kind in any administrative or court proceeding, but is intended solely for purposes of the Equal Employment Opportunity Commission's ("EEOC") investigatory responsibilities.

Employees in the Industrial Engineer Level 2 classification are responsible for developing, implementing and evaluating processes to optimize operational efficiency. They use mathematical, process and simulation models to optimize use and integration of facilities, equipment, materials, processes and personnel. They assist in developing models, data bases and spreadsheets to analyze data (e.g., statistics, operations research, engineering economics), and provide summary analysis and metrics for consultation to customers (e.g., management, departments, suppliers). They also assist in research, design, development, improvement and implementation of processes to enhance schedule performance, lower cost, and improve quality, through the application of Lean and other Industrial Engineering concepts for large scale systems integration and asset utilization. Boeing has provided a copy of the Industrial Engineer 2 job description for your review (Attachment 3).

III. **Boeing issued employee corrective action to Mr. Nahum based on Mr. Nahum's refusal to comply with direction from his supervisor, Jeffrey Dillaman**

As stated previously, Boeing hired Mr. Nahum on February 16, 2018 as an Industrial Engineer 2, at which time he joined the 777 Industrial Engineer LRIP SI/DOORS/WBJ department. Shortly thereafter (March 9, 2018), Jeffrey Dillaman (White) became the first-line manager of this department. This department is made up of a diverse group of 15 employees, including White, African-American, Asian, and Hispanic individuals. Mr. Dillaman has been personally responsible for the hiring of two African-American teammates since he joined this department.

It is a primary role of the Industrial Engineer to ensure all work is in the correct location and correct sequence in the factory to ensure the manufacturability and affordability of the airplane build. In other words, it is their responsibility to build the plan defining what specific work should be performed by each specific mechanic on each specific day. When work is identified to be out of sequence with the build order, the Industrial Engineer is responsible for investigating the correct placement of the work, completing a Production Planning Change Request (PPCR) requesting a reorganization of work, getting buy-off from the manufacturing managers of both the sending and receiving shops, then submitting the signed request to a database granting manufacturing engineering the authority to execute the movement of the work.

An agreement had been reached between Industrial Engineering and shop management, that in very limited circumstances a PPCR was not required if the work was being moved within the same shop. In these circumstances, the process had been leaned out requiring only that the Industrial Engineer get shop management approval before entering the change request into the database.

In August 2018, Mr. Nahum came across such a situation and did not complete a PPCR before inputting the request into the system to move the work. Based on what he knew, this initial action by Mr. Nahum was reasonable. However; over the course of the next two days, Mr. Nahum continually refused to accept information and direction from team lead Paul Kurfess, team lead Brittany Asahara, or his manager, Mr. Dillaman, informing him that in this specific situation, a PPCR was needed because while the work was remaining in the same shop, it was moving between two different budgets, therefore requiring the more formalized PPCR process.

During this incident, Mr. Nahum became argumentative and resubmitted his request through their database twice despite clear direction that a PPCR was required prior to submitting the change request. Boeing has provided a copy of an email exchange between Mr. Dillaman and Mr. Nahum regarding this situation (attachment 4) as well as an email exchange between Ms. Asahara and Mr. Nahum (Attachment 5). This was not the first time Mr. Nahum had proven to be obstructive when given direction and Mr. Dillaman made the decision to refer this issue to Boeing's HR Fact Finding group, requesting corrective action be issued to Mr. Nahum. A representative from the Fact Finding team researched the situation, found evidence to support Mr. Dillaman's allegation and a corrective action memo was issued to Mr. Nahum on September 4, 2018 for failure to comply with management direction (attachment 6).

Rather than correcting his behavior, Mr. Nahum refused to take any responsibility in this situation and in fact, continued to display argumentative behavior regarding the PPCR process and feedback provided by management and team leads. This behavior led to the issuance of additional corrective action on February 7, 2019 (Attachment 7). This corrective action memo also cited failure to comply and included an unpaid suspension. In this situation, Mr. Nahum again refused to complete a PPCR for work that needed to be moved within the work sequence, despite clear direction from Mr. Dillaman to do so. Boeing has provided a copy of an email exchange between Mr. Dillaman and Mr. Nahum regarding this situation (Attachment 8). In this instance, due to Mr. Nahum's obstructive behavior, Mr. Dillaman directed the team lead to complete the PPCR so that the work could move forward. Please keep in mind that these situations do not involve an employee refusing to do work because of safety or ethical concerns. Rather, Mr. Nahum refused to complete the work as directed because he wanted to use the faster exception process that required less work for him.

Additionally, Mr. Nahum's responses to management direction are often disrespectful. In support of this statement, Boeing has provided a copy of an email exchange between Mr. Dillaman and Mr. Nahum, dated October 31, 2018, in which Mr. Dillaman counsels Mr. Nahum regarding his dismissive response to a request from Ms. Asahara (Attachment 9). In his response, Mr. Nahum rejects Ms. Asahara's suggestion that an issue be reviewed for solution by stating "There is too much confusion right now. I'll take a look at this task once the dust settles." Mr. Dillaman counsels Mr. Nahum that the "dust" does not ever settle, particularly on a new airplane build such as the 777X they are currently working and states that it is Mr. Nahum's job to sort through this "confusion". Mr. Nahum responds to this counsel by stating that he and the shop he works with "understand the chaos and do not plan on wasting their time beating a dead horse or generating more confusion".

Boeing has also provided a copy of an email exchange between Mr. Dillaman and Mr. Nahum, dated January 7, 2019 (Attachment 10). In this email, Mr. Dillaman attempts to counsel Mr. Nahum on his inappropriate response to a request from team lead Paul Kurfess (White), along with his work expectations for Mr. Nahum. Mr. Nahum; however, refuses to listen or take Mr. Dillaman's counsel seriously, reiterating that his perspective and his methods are the superior ones and that it is Mr. Dillaman who does not understand his work or appreciate his work performance.

These documents are examples of an ongoing issue and not exhaustive of the challenges Mr. Nahum has presented, and continues to present, in the work place. Mr. Nahum's behavior is unacceptable and coupled with his refusal to complete a PPCR later in the month of January, resulted in the additional corrective action. There is no connection between Boeing's actions in addressing Mr. Nahum's inappropriate behavior and Mr. Nahum's race (Black).

Mr. Nahum's characterization of these issues in his Charge as "minor" is a gross understatement. Mr. Dillaman has received numerous complaints from team leads and shop floor customers regarding Mr. Nahum's obstructive and disrespectful behavior, to include requests to have Mr. Nahum removed from supporting a particular area because of the disruption his behavior causes. Boeing will continue to address any behavior by Mr. Nahum that is not in keeping with Boeing policy to treat others with dignity and respect and/or failure to comply with management direction, regardless of Mr. Nahum's race or any other protected factor.

IV. **Boeing provided factual work performance feedback to Mr. Nahum based on his documented work performance and reassigned him to support another area based on business need**

Mr. Nahum alleges in his Charge that he was marked down on his mid-year performance evaluation for having disputes with other employees; however, Mr. Dillaman was not able to provide documentation or identify the incidents referred to. He also alleges that he was then reassigned to another area because he was told his coworkers were afraid to work with him.

Mr. Nahum provides no reasoning as to how either of these situations is connected to his race and Boeing denies any connections to Mr. Nahum's race. As demonstrated above, Mr. Nahum has not met work expectations, which is reasonably and accurately reflected in his performance review. Boeing has provided a copy of Mr. Nahum's 2018 year-end review (Attachment 11). This document supports that there were key areas of improvement identified for Mr. Nahum to address. The continued corrective action in 2019 documents Mr. Nahum's failure to do so.

Mr. Dillaman discussed areas of improvement with Mr. Nahum during his mid-year and year-end review meetings but did not provide written documentation to Mr. Nahum during these conversations as he was not comfortable in disclosing the names of the individuals who had provided feedback to him. This does not negate the validity of the concerns or the need for Mr. Nahum to correct his behavior, particularly given that the majority of these incidents involved email exchanges that Mr. Nahum participated in and therefore was already well aware of or that were discussed with Mr. Nahum at the time of their occurrence. Mr. Nahum's refusal to accept the work performance feedback provided by Mr. Dillaman because he was not provided written documentation is symptomatic of his refusal to accept any responsibility for his poor work performance. Boeing has provided two examples of emails Mr. Dillaman received from Mr. Nahum's coworkers prior to the mid-year performance review (Attachment 12) to supplement those provided in support of the work performance concerns discussed in the previous section.

Regarding Mr. Nahum's allegation that he was reassigned to a different area because he was told his coworkers were afraid to work with him, Boeing asserts that while both statements are correct independently, they are not connected. Mr. Dillaman had shared with Mr. Nahum that several of his coworkers had expressed concern regarding Mr. Nahum's behavior when he is frustrated because he had displayed this frustration in a physical manner by throwing his glasses down onto his desk and hitting a door with the palm of his hand. Mr. Dillaman discussed this situation with Mr. Nahum to provide insight and allow Mr. Nahum to correct his behavior. This discussion however was separate from the decision to reassign Mr. Nahum to support a different area.

At the time Mr. Nahum joined this team as a new hire in February 2018, he was slated to be the Industrial Engineer for the Forward B Deck Mechanical area and the Systems Installation Small Feederline; however, initially he was only given the Forward B Deck Mechanical area while he went through Industrial Engineering New Employee training. In July 2018, Mr. Dillaman hired Regina Long (Black) and it was determined that she would be assigned the Forward B Deck Mechanical area because it was stable, allowing Ms. Long time for her onboarding and training and allowing Mr. Nahum to focus on getting the Systems Installation Small Feederline area ready for the next airplane. This change in work assignment is not unusual, and is to be expected in the normal course of business, but particularly when a new employee joins the team and necessitates a redistribution of work.

## V. **Conclusion**

Mr. Nahum's allegation that Boeing discriminated against him based on his race (Black) is completely without merit. Mr. Nahum has repeatedly displayed disrespectful and disruptive behavior which Mr. Dillaman has addressed appropriately via Boeing's Employee Corrective Action process. Mr. Dillaman has also provided factual work performance feedback to Mr. Nahum, identifying key areas of improvement, which Mr. Nahum has made little to no effort to correct. Hence, these actions are unrelated to Mr. Nahum's race. Based on the information provided herein, Boeing respectfully requests the EEOC issue a "no cause" finding regarding Mr. Nahum's allegations.

If there is any further information that Boeing can provide to assist in the resolution of this charge, please contact me at (480) 509-5288.

Sincerely,

Catherine A. Diga
The Boeing Company

# APPENDIX C

May 15, 2019

U.S. Equal Employment Opportunity Commission
Seattle Field Office
909 First Avenue Ste. 400
Seattle, WA 98104-1061

Case: Setondji Nahum Vs. The Boeing Corporation
EEOC No 551-2019-01088

Dear E.E.O.C. Representative,

I, Setondji V. Nahum, hereby submit the following as a response to the provided respondent's position statement.

Setondji V. Nahum strongly rejects the Boeing Corporation statement that Mr. NAHUM has not been treated differently and unfairly based on race and other EEOC protected categories. Setondji V. Nahum further states that according to federal and Washington state laws, he experienced discrimination, harassment and potentially a hate crime throughout his employment with the Boeing Company. The actions taken by the Boeing Company to hide and support such discriminatory practices also constitute a violation of federal law. Based on the evidence, Setondji V. NAHUM respectfully requests the E.E.O.C. takes all necessary actions to present this case to a court of law and potentially the Federal Bureau of Investigations (F.B.I.).

## I. Federal and Washington State laws strictly prohibits discrimination, harassment, hate crimes and retaliation upon filing a case with the E.E.O.C.

Federal and Washington State laws strictly prohibits discrimination, harassment, hate crimes and retaliation upon filing a case with the E.E.O.C. More importantly in this case, supports for such practices is also prohibited by the law. The Boeing Company has opted to violate federal and state laws by supporting such discrimination, harassment and retaliation.

## II. Setondji Nahum Work History

Setondji V. Nahum hereby confirms to have continuously completed excellent and exemplary work. The assignments that Mr. NAHUM was requested to complete seldomly reflected a 2nd level Industrial Engineer job description. Assignments essentially constituted of excessive mind-numbing repetitive tasks such as excel manual data entry, basic manufacturing floor support and basic manufacturing data analysis. Requests for 2nd level Industrial Engineering(IE) type of work was often dismissed and treated/labelled as "insubordination".

## III. Boeing issued employee corrective actions to Mr. NAHUM based on defamation, misconstrue facts and attempts to hide quality violations. Please note that such fictitious corrective actions were used as nothing but a fear tactics to instill fear and a tool for retaliation

Through facts-based materials and documented proofs, Mr. NAHUM has submitted irrefutable proofs against all false allegations and fictitious corrective actions. The SPEEA Union has also received such materials through grievances and appeals filed against such fictitious corrective actions. The Boeing Company has also directly received such materials through three internal ethics filings. What Mr. NAHUM came across in August of 2018 was a violation of documented work instructions, quality and manufacturing processes and an attempt to hide such violations. Mr. NAHUM attempted to address the issue the best way possible by first resolving the issue as per process and then bringing it up the attention of IE lead and Management. Mr. NAHUM completed PPCRs on a daily basis. Stipulating that such represented unwanted extra work simply reflect the evaluator lack of familiarity with the build and process. Moreover, jeffrey dillaman had been very critical of Mr. NAHUM without proof or basis. Mr. NAHUM therefore ensured that his work was always on par with written and documented process, and work instructions. Under no circumstances was Mr. NAHUM argumentative. Mr. NAHUM views jeffrey dillaman's behavior and actions as disrespectful and unethical. Please note that upon a process update the PPCR was created and submitted through the SAT Process by Mr. NAHUM. Mr. NAHUM find it very telling that Boeing issued a corrective action for not writing a PPCR although such was written by Mr. NAHUM.

IE Management requests and responses to Mr. NAHUM have been disrespectful and dismissive throughout his employment. Mr. NAHUM finds it very telling that the Boeing company reports the following statement as inappropriate. "We understand the chaos and do not plan on wasting our time beating a dead horse or creating more confusion." Such statement was first used by jeffrey dillaman during a team meeting upon Mr. NAHUM bringing up issues related to the PPCR process and the Feederline shop. This statement is very conservative compared to IE Management and Manufacturing communication style. This statement reflects the communication culture within which Mr. NAHUM was inserted. The hypocrisy and double standard simply point to Mr. NAHUM being often held against discriminatory standards and premeditated allegations. Mr. NAHUM has submitted multiple documented materials that proved that inappropriate actions were often taken against him. Management behavior and responses to Mr. NAHUM feedback have simply been unacceptable. It was to no surprise to Mr. NAHUM that leads and co-workers started to follow such disrespectful behaviors. It culminated in a Co-worker sarcastically and publicly stating that Mr. NAHUM was "just a carpet that we step on with the approval of management."

IE Management apparently did not have an understanding of the value of concurrent manufacturing process. Nevertheless, this was required to accomplish assigned tasks. IE Management was often not in tune with the request and feedback of the assigned manufacturing shop. Such culminated in the manufacturing shop lead clearly voicing his exasperation with unrealistic and confusing IE requests. IE management response was to immediately blame such program and logistic issues on Mr. NAHUM. IE management constantly provided misleading and false inputs. Moreover, IE management requests often infuriated Manufacturing leads. Requests by Mr. NAHUM to have IE Management hold discussions with Manufacturing leads to ensure a minimum level of concurrency was qualified as "insubordination" and eventually lead to yet another fictitious corrective action. Please note that the Boeing Company responses to the issued corrective actions further reflect a lack of familiarity with the truth and an attempt to assassinate Mr. NAHUM's character.

**IV. The Boeing Company provided a discriminatory and inaccurate work performance evaluations often based on Gossip. Reassignment to other area support was based on individuals outside of Mr. NAHUM protected class being asked to refuse to work with Mr. NAHUM**

As previously stated, Mr. NAHUM assignment often consisted of very basic tasks such as extensive manual data entry or very basic data analysis. Program input from IE management and leads was frequently inaccurate and often needed to be updated. Re-work was a daily action. Confusion is respectfully the best way to describe IE Management style. The Boeing Company provided a tactful discriminative performance evaluation by downgrading employee performance due to conditions out of his control. (Program issues, quality violations, contradictory instructions, false statements and gossip). Such actions were not used for other employees outside of Mr. Nahum's protective class. Moreover 3rd party gossip instigated from employees outside of Mr. NAHUM's protective class and used as a basis to downgrade Mr. NAHUM's performance evaluation was never assessed for truth or even documented. Mr. NAHUM provided multiple materials and reasons to show that his work and performance exceeded expectations based on assignments and inputs. **Mr. NAHUM here points to the Boeing Company respondent statement within which it is stated that upon arrival of a new IE, they elected to assigned Mr. NAHUM's area to this IE because it was stable. The area's schedule was stable because Mr. NAHUM stabilized it through his work ethics and approach to work challenges. Please note that it is the excellence in Mr. NAHUM's work that allowed for such area to be overtaken by a new IE even at such an early stage of the program. This is further proof of the hypocrisy and injustice that Mr. NAHUM has been a victim of.**
**Mr. NAHUM finds it very telling that despite all attempts to discredit his work and defame his character, the Boeing Company contradicts itself by admitting the excellent quality and excellent work performance of Mr. NAHUM despite challenges, discrimination and harassment.** Mr. NAHUM is a professional that prioritize getting work done as accurately and efficiently as possible.

Furthermore, as stated by jeffrey dillaman Mr. NAHUM performance was downgraded due to 3rd party gossip from people outside of Mr. NAHUM protective class. jeffrey dillaman further stated during the yearly performance evaluation that the reason Mr. NAHUM was assigned to a different work area is people outside of Mr. NAHUM's protective class "Refused to work with Mr. NAHUM upon management request". The solution was to moved Mr. NAHUM to a different work area. Mr. NAHUM finds it more discriminatory that such individuals refusal to comply with management request is celebrated through the move of the minority individual. Meanwhile when the minority individual observed a quality violation and fostered a process update, it is deemed as "insubordination" and results in fictitious corrective actions being written.

**V. Conclusion**

Mr. NAHUM finds it deeply saddening that the Boeing Company would hide such quality violations and protects such defamation, discrimination and harassment. The Boeing Company may not realize that what has occurred within its building is a hate crime. Under no circumstances shall anyone accept such treatments. Mr. NAHUM strongly rejects the Boeing Company's respondent statement. Please note that the actions against Mr. NAHUM were premeditated.

Discrimination and defamation were often glorified. This pattern of premediated defamation for the purpose of discriminating and harassing employees is illegal and unacceptable.

Based on the information provided above and the documented materials submitted, Mr. NAHUM respectfully requests that the E.E.O.C. pursues this issue both in a court of law and with the F.B.I.

If there is any further information that Mr. NAHUM can provide to further assist in the resolution of this charge, please contact Mr. NAHUM at 206-595-6913.

Respectfully,

Setondji V. NAHUM

*Nahum Setondji*    05/28/2019

# APPENDIX D

## SETTLEMENT AND RELEASE AGREEMENT

This settlement and release Agreement (Agreement) is entered into by The Boeing Company (the Company), Society of Professional Engineering Employees in Aerospace SPEEA (the Union), and **Setondji Nahum** BEMSID **2266304** (Employee) to resolve any and all issues arising out of or in any way related to his employment, including but not limited to his discharge on May 13, 2019.

1. The Company agrees to pay Employee $1,538.40 less lawful deductions. Employee understands that this amount will be included in the 2019 W-2 he receives from the Company.

2. The Company agrees that the Employee's Work History will be amended to reflect his departure from employment as a layoff effective 5/13/2019, without the typical benefits that accompany such a layoff.

3. Employee agrees that he will not at any time in the future seek or accept employment with the Company either directly (e.g., as an employee) or indirectly (e.g. including, without limitation, as a contract hire, consultant, or leased employee).  For the purposes of this paragraph, "Company" includes, without limitation, any parent, sister, or subsidiary corporation.  Employee waives any and all rights under the Company-Union collective bargaining agreement related to his/her return to Company employment.

4. As a condition precedent to the Employee's receipt of remuneration described in Paragraph 1 above, the employee understands that he is required to withdraw Equal Employment Opportunity Commission Charge # 551-2019-01088.

5. Any change to employment records or any other terms outlined in this Agreement shall not entitle Employee to any additional compensation or benefits.  Employee will only receive the compensation and benefits specifically outlined in this Agreement.

6. Employee releases the Company and the Union, including their respective directors, officers, employees, and agents, from any and all claims, demands, charges or other causes of action arising out of any contract; any federal, state, or other governmental constitution, statute, or regulation; the common law; or any other legal right or limitation relating to the employment relationship including, but not limited to, the, the Worker Adjustment and Retraining Notification Act (WARN), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Americans With Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), the Employee Retirement Income Security Act of 1974 (ERISA); the Washington Law Against Discrimination, and any claims arising out of the collective bargaining agreement between the Company and the Union.

Nothing in this Agreement shall interfere with Employee's right to participate in any whistleblower activity that is protected under the whistleblower provisions of federal, state, or local laws or regulations or to receive applicable statutory rewards for such whistleblower complaints filed directly with the government.

Further, nothing in this Agreement shall interfere with or prohibit Employee's right to cooperate in any investigation of any charge or complaint filed with a federal, state, or local governmental agency, including but not limited to the Equal Employment Opportunity Commission or National Labor Relations Board, including a charge or complaint filed by Employee or by anyone else on behalf of Employee. Subject to the foregoing and unless otherwise prohibited by law or regulation, Employee hereby agrees to waive any right to recover monetary damages, compensation, benefits, or other individual relief as to any charge or complaint filed by Employee or by anyone else on behalf of Employee.

7. This Agreement does not constitute an admission or statement by the Company or the Union of any wrongdoing, fault, liability, or contractual obligation.

8. This Agreement will not hereafter be invoked by Employee, the Union or the Company as precedent in connection with any other grievance, dispute or legal matter between the parties, except any matter involving Employee or the enforcement of this Agreement.

9. Employee and the Union agree that neither will publicize, either orally or in writing, in any way or to any person the fact of this Agreement or its terms, with the exception that the Company agrees that the Union may communicate the terms of this Agreement to its Board and that Employee may state that the matter was resolved to the parties' mutual satisfaction. The parties agree to keep completely confidential all terms of this Agreement, including its contents and the contents of the negotiations leading up to this Agreement.

10. This Agreement is severable. In the event any provision of this Agreement is held invalid, all remaining provisions of this Agreement shall continue in full force and effect.

11. This Agreement shall be interpreted under the laws of the state of Washington.

12. The parties agree to bear their own costs and attorneys' fees.

The parties acknowledge that they have been fully advised as to the legal effect of this Agreement and have executed this Agreement freely and voluntarily. Employee acknowledges that he has carefully read and fully understands all aspects of this Agreement, and that he has not relied upon any representations or statements not set forth herein or made by Boeing's representatives.

**Society of Professional Engineering Employees in Aerospace (SPEEA)**

By_____
    **Steve Spyridis**

Date_____

**Employee**

By_____
    **Setondji Nahum**

Date_____

**The Boeing Company**

By_____
    **Michelle Joo**

Date_____

# APPENDIX E



**TALX UCM SERVICES**

July 12, 2019

OFFICE A1

FAX (800) 301-1795



Dear State Representative:

This is in reference to form , Response to Request for Relief of Charges, dated June 12, 2019 which allows benefits to the above individual.  We wish to appeal the determination based on the following.

The claimant was discharged for violation of a reasonable and known policy. The claimant was discharged when he failed to perform a statement of work as requested. Please see the attached statements, corrective action memos, meeting request, emails, crew cycling analysis, corrective action procedure, and corrective action process/policies.

Be advised, TALX UCM Services Inc is a duly authorized agent empowered to act on behalf of the above employer.  Any correspondence related to this individual should be mailed to: P.O. Box 66507, St. Louis, MO 63166-6507.

For additional information, please contact me at (314) 684-2223 or you can reach me via email at ▮▮▮▮▮▮▮▮▮▮ or fax (800) 304-4179.

Thank you for your time and consideration.

Sincerely,



ATTACHMENT
P, PM, MS

RD

Page 3 of 201