UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SETONDJI NAHUM,

              *Plaintiff,*

       v.

THE BOEING COMPANY, *et al.*,

              *Defendants.*

CASE NO. 2:19-cv-1114-BJR

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

## I.     INTRODUCTION

*Pro se* Plaintiff Setondji Nahum accuses his former employer, Defendant The Boing Company, and his former supervisor, Defendant Jeffrey Dillaman, of discrimination, harassment, and defamation based on his termination from employment.   Before the Court are the parties' Cross-Motions for Summary Judgment.   *See* Defs.' Mot. for Summ. J., Dkt. No. 90 ("Defs.' Mot."); Pl.'s Mot. for Summ. J., Dkt. No. 98 ("Pl.'s Mot.").[1]   Having reviewed the Motions, the oppositions thereto, the record of the case, and the relevant legal authorities, the Court will grant Defendants' Motion and deny Plaintiff's Motion.[2]   The reasoning for the Court's decision follows.

---

[1] Plaintiff requests oral argument to address the pending motions.  Pl.'s Mot. at 2.  The Court finds that the Motions can be resolved on the briefing and that oral argument is unnecessary.  *See* Local Rules WD. Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument.").

[2] Plaintiff contends that summary judgment is premature as there are outstanding discovery disputes regarding "[m]ultiple interrogatories . . . directly addressed to Boeing Management" which he claims Defendants have failed

1

## II.    BACKGROUND

### A. Factual Background

Plaintiff was hired by Boeing on February 16, 2018 as an Industrial Engineer Level 2, which entails "developing implementing, and evaluating processes to optimize efficiency during aircraft production." Defs.' Mot. at 4; *see also* Decl. of Jeffrey Dillaman, Dkt. No. 92 ¶¶ 2–4 ("Dillaman Decl."). Mr. Dillaman became Plaintiff's manager shortly thereafter on March 9, 2018. Defs.' Mot. at 5. Plaintiff describes himself as an African and Black male. *See, e.g.*, Am. Compl., Dkt. No. 47 at 5.

Defendants claim that from the very beginning of Plaintiff's employment it was apparent that he was "unable to successfully coordinate with other teams or deliver results in accordance with the expectations of his role." *Id.* at 5. According to Defendants, Plaintiff was unable to work collaboratively, maintained an argumentative, sarcastic, and mocking tone, and was unresponsive to both constructive criticism and direct orders from his supervisors. Defendants have submitted

---

to produce. Pl.'s Reply in Opp'n to Defs.' Mot. for Summ. J., Dkt. No. 106 at 20–22 ("Pl.'s Resp."). First, Plaintiff's request fails to raise with specificity what he claims Defendants have failed to produce, merely that they "produced whatever they wished which included nothing but duplicate and reprinted materials and non-genuine materials." *Id.* at 22. Defendants deny that they have failed to turn over any evidence. Defs.' Reply in Support of Defs.' Mot., Dkt. No. 108 at 17–18 ("Defs.' Reply"). Further, this Court held a telephonic discovery dispute hearing on August 24, 2020 to address Plaintiff's contention that Defendants failed to fully answer Plaintiff's interrogatories. *See* Min. Entry, Dkt. No. 85. That day, the Court published an order resolving the dispute and announcing that the Order "resolves all current discovery disputes between the parties." Order re Disc. Hr'g, Dkt. No. 86 at 2. Discovery in this matter closed on September 2, 2020. Order Setting Trial Date and Related Dates, Dkt. No. 58. As such, Plaintiff's request to delay discovery is both untimely and does not identify the evidence he seeks with sufficient specificity to warrant a delay. *See* Fed. R. Civ. P. 56(d); *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 662 (9th Cir. 2020) (internal citations and quotations omitted) ("To prevail on a request for additional discovery under Rule 56(d), a party must show that: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment.").

numerous contemporaneous emails from Plaintiff's supervisors and coworkers attesting to, and demonstrating, the difficulty in working with Plaintiff. *See, e.g.*, Dillaman Decl., Exs. 3, 5, 7, 10, 11, 14, 16, 17, 18, 19, 22, 23, 24, 27, 28, 31, 32, 34, 36, 37, 40, 41, 42. These concerns were expressed in Plaintiff's one, and only, performance evaluation while employed with Boeing. *See* Dillaman Decl., Ex. 6, Dkt. No. 92 at 28–33 ("2018 Performance Evaluation"). The Evaluation includes "Interim Manager Insights" from Mr. Dillaman signed June 29, 2018, which include the comment that "[t]here are areas that need to improve to meet my expectations at the end of the year (mostly in terms of taking direction and working effectively with others)." *Id.* at 32. The Evaluation was finalized on November 14, 2018 and includes numerous performance based criteria, for which Plaintiff was consistently ranked as "met expectations" except for the relevant categories of Communication, Customer Satisfaction, and People Working Together for which he was ranked "Met Some Expectations." *Id.*

Defendants claim that Plaintiff's intransigence quickly led to workplace issues. In mid-August 2018, for example, Defendants claim that Plaintiff seven times refused to complete a work task, assembling a Production Planning Change Request ("PPCR"), which Mr. Dillaman expressly charged him with completing. Defs.' Mot. at 6–8. Plaintiff rejects this claim and argues that, based on company policy, a PPCR was not necessary. *See* Pl.'s Mot. at 6; Pl.'s Resp. at 13–14. Defendants responds that a PPCR was both necessary and that, whether or not it was necessary, Plaintiff's refusal to complete the work even after direct instruction from his supervisor created workplace issues. Mot. at 7–8. Mr. Dillaman submitted the incident to Boeing's Human Resources for investigation and possible discipline. Dillaman Decl. ¶ 28; Decl. of Tami R. Foxe, Dkt. No. 93 ¶ 3 ("Foxe Decl."). Tami Foxe, a Human Resources Generalist, conducted a fact-

3

finding investigation, interviewing various employees involved in the dispute, and concluded that Plaintiff failed to comply with management expectations. Foxe Decl. ¶¶ 5–7; *see also* Foxe Decl., Ex. 44, Dkt. No. 93 (Investigation Case Notes). Based on that finding, Plaintiff was issued a Corrective Action Memo ("CAM") on September 4, 2018. *See* Dillaman Decl., Ex. 15, Dkt. No. 92 at 86 (First Employee Corrective Action Memo).

According to Defendants, Plaintiff's combative and dismissive behavior continued after his first CAM. Defendants report that he continued to refuse to follow directions from Mr. Dillaman and other team members concerning simple tasks such as sorting out confusion in statements of work, creating workflow documentation in project management tools, and refusing to attend team meetings. Mot. at 8–10. Mr. Dillaman again submitted this insubordination to Boeing HR. *Id.* at 10; Decl. of Janet Bishop, Exs. 45 (Fact-Finding Investigation Request Form); 46 (Incident Details), Dkt. No. 94 ("Bishop Decl."). The matter was assigned to Timothy Saner, another Human Resources Generalist, who conducted another fact-finding investigation. Dillaman Decl. ¶¶ 47–48; Bishop Decl. ¶¶ 6–7; *see also* Bishop Decl., Exs. 47 (Investigation Case Notes); 48 (Plaintiff's Edits to Mr. Saner's Written Summary). Based on his investigation, Mr. Saner concluded that Plaintiff failed to comply with management directions and expectations to complete required tasks. Bishop Decl. ¶ 8. On February 7, 2019, Plaintiff was issued his second CAM. *See* Dillaman, Decl., Ex. 26, Dkt. No. 92 at 123 (Second Employee Corrective Action Memo).

Based on his belief that the two CAMs issued against him were unwarranted, Plaintiff submitted three complaints to Boeing's ethics team on April 10, 2019. Mot. at 14–15. Review of the complaints reveals no allegation of discrimination. *See* Decl. of Carl E. Weaver, Exs. 50, 51, 50 (Case Detail Reports), Dkt. No. 95 ("Weaver Decl."). The complaints were compiled and

4

assigned to Carl Weaver of Boeing's Corporate Investigations Team, who conducted an internal investigation.

Meanwhile, according to Defendants, Plaintiff's second CAM did not resolve his behavioral issues.  For example, in January of 2019, Defendants claim that Plaintiff refused to complete another PPCR, despite being directed to do so multiple times by Mr. Dillaman.  Mot. at 10–11.  Further in March of that year, Defendants claim Plaintiff was unable to complete a task assigned to him, despite specific directions from Mr. Dillaman, leading to frustration throughout the assigned team and delay in the project.  Mot. at 11–12.  When given constructive feedback on the assignment, Mr. Dillaman claims that Plaintiff was dismissive and unyielding.  *Id.* at 11; *see also* Dillaman Decl., Ex. 31, Dkt. No. 90 at 190–92 (March 22, 2019 Email Chain between Mr. Dillaman and Plaintiff).  This incident led Mr. Dillaman to submit Plaintiff to HR for a third time. Mot. at 13–14; Dillaman Decl. ¶ 69; *see also* Decl. of Kima Lima, Exs. 54 (Fact-Finding Investigation Request Form); 55 (Incident Details), Dkt. No. 96 ("Lima Decl.").

The matter was assigned to a third Human Resources Generalist, Kim Lima, who conducted a third fact-finding investigation.  Mot. at 15; Lima Decl. ¶¶ 3, 5–11; *see also* Lima Decl., Exs. 56–59 (investigation materials).  Based on her review of the facts, Ms. Lima concluded that Plaintiff had failed to comply with management direction in violation of company policy. Lima Decl. ¶ 12.  Since this was his third violation in the same year, Plaintiff was issued a third CAM and terminated on May 13, 2019.  *See* Dillaman Decl., Ex. 43, Dkt. No. 92 at 249 (Third Employee Corrective Action Memo).  This decision corresponded with the conclusion of Mr. Weaver's investigation of Plaintiff's internal complaints.  On May 8, 2019, Mr. Weaver concluded that, based on his investigation, there was insufficient evidence to substantiate Plaintiff's claims

of unfair treatment.  Mot. at 15; Weaver Decl. ¶ 9.

Defendants produce affidavits and contemporaneous emails from the third investigation attesting to the brimming frustrations among supervisors and colleagues with Plaintiff's inability to complete his assignments, dismissive attitude, and refusal to take responsibility.  Mot. at 13–14. One email from this timeframe is instructive, in which Steve Simpkins, the manufacturing lead for the project to which Plaintiff was assigned, wrote to Mr. Dillaman on March 22, 2019:

> I'm through with Setondji V Nahum. It has become quite apparent to me that he has made no effort to even research the door package to any level of understanding. At this point he is a waste of my time, that I am quite short of these days. I resent the fact that I have been made to deal with an obvious problem child for the IE world, that you have saddled with one of the most difficult packages to manage.

Dillaman Decl., Ex. 41, Dkt. No. 92 at 241 ("Simpkins Email").

After his termination, Plaintiff applied to the Washington Employment Security Department ("ESD") for unemployment benefits.  Defs.' Mot. at 15–16.  ESD contacted Boeing with a claim form, which was handled by Boeing's authorized unemployment compensation agent, TALX UCM Services Inc. ("TALX").  On June 10, 2019, TALX informed ESD that Plaintiff had been discharged for violation of a reasonable and knowable company policy.  Decl. of Amy C. Evans, Dkt. No. 97 ¶ 4; *see also id.*, Ex. 62, Dkt. No. 97 at 5–6 (TALX Cover Letter to ESD).  This included brief summaries of Plaintiff's three CAMs and supporting materials.  ESD, nevertheless, approved Plaintiff's application for unemployment benefits.  Pl.'s Mot., Ex. 1, Dkt. No. 98-1 at 252.

**B. Procedural History**

On July 18, 2019, Plaintiff filed suit in this Court advancing seven self-styled causes of action, including: (1) racial discrimination in violation of Title VII of the Civil Rights Act of 1964;

6

(2) retaliation in violation of Title VII; (3) wrongful termination through abuse of power and authority; (4) harassment in violation of Title VII; (5) libel and defamation *per se*; (6) conspiracy against rights; and (7) retaliation though act of discrimination and abuse of office.  Compl., Dkt. No. 1.  He appears in this matter *pro se*.

On December 17, 2019, this Court granted in part and denied in part a motion to dismiss submitted by Defendants.  Order Granting in Part and Denying in Part Defs.' Mot. to Dismiss, Dkt. No. 42 ("December 17 Order").   Specifically, the Court denied dismissal of Plaintiff's discrimination and harassment claims (Claims 1 and 4); granted dismissal of Plaintiff's libel and defamation claim without prejudice (Claim 5); and dismissed with prejudice Plaintiff's Title VII retaliation, wrongful termination, conspiracy against rights, and retaliation though act of discrimination and abuse of office claims (Claims 2, 3, 6, and 7).  Plaintiff filed a motion to reconsider the Court's holdings on December 26, 2019, Mot. for Recons., Dkt. No. 43, and shortly thereafter filed an amended complaint on January 9, 2020, repleading his libel and defamation claims, Am. Compl., Dkt. No. 47.  Defendants moved to dismiss Plaintiff's Amended Complaint. Defs.' Mot. to Dismiss Pl.'s Am. Compl., Dkt. No. 51.

In one order resolving both motions, the Court dismissed Plaintiff's Motion for Reconsideration and Defendants' second Motion to Dismiss, leaving the same three claims as had survived Defendants' original Motion to Dismiss.  Order Denying Pl.'s Mot. for Recons. and Denying Defs.' Mot. to Dismiss, Dkt. No. 61 ("April 2 Order").  Now before the Court are both parties' cross-motions seeking summary judgment as to these final three claims.

### III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a district court shall grant summary

7

judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of material fact is genuine" where there is "sufficient evidence for a reasonable jury to return a verdict for the non-moving party," *Karasek v. Regents of Univ. of California*, 956 F.3d 1093, 1104 (9th Cir. 2020) (quoting *Tauscher v. Phoenix Bd. of Realtors, Inc.*, 931 F.3d 959, 962 (9th Cir. 2019)), and a fact is "material," where it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The standard for summary judgment does not change in the context of cross-motions. Thus, in reviewing cross-motions for summary judgment, "each motion must be considered on its own merits." *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 885 (9th Cir. 2019) (quoting *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001)). The Court must "consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015); *See also AGCS Marine Ins. Co. v. Expeditors Int'l Ocean, Inc.*, 470 F. Supp. 3d 1210, 1216 (W.D. Wash. 2020). The Court must rule on each motion "on an individual and separate basis determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *AGCS Marine Ins.*, 470 F. Supp. 3d at 1216 (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed. 1998))).

In doing so, the Court considers each motion according to the familiar burden shifting scheme wherein the movant bears the initial burden of showing there is no genuine issue of material fact, which the nonmovant must then rebut. *See AGCS Marine Ins.*, 470 F. Supp. 3d at

1215–16; *see also Massachusetts Bay Ins. Co. v. Walflor Indus., Inc.*, 383 F. Supp. 3d 1148, 1156 (W.D. Wash. 2019).  In reviewing the parties' Motions, the Court is cognizant of the deference paid to *pro se* plaintiffs, which it has already elaborated.  *See* December 17 Order at 3–4; April 2 Order at 4–5.  At the same time, as the Court stated in the December 17 Order and reiterated in the April 2 Order, the Court cannot "supply essential facts that the *pro se* plaintiff has failed to plead." December 17 Order at 3–4 (citing *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)); April 2 Order at 5.

Similarly, on summary judgment, "[p]ro se litigants must follow the same rules of procedure that govern other litigants."  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *rev'd on other grounds*, *Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012); *see also In re Greenstein*, 589 B.R. 854, 861 (C.D. Cal. 2018), *aff'd*, 788 F. App'x 497 (9th Cir. 2019) ("Pro se litigants must comply with basic procedural requirements, despite not being represented by an attorney.").  As such, the familiar standard of evidentiary support applies wherein a nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A nonmovant cannot defeat summary judgment "by resting upon the allegations or denials of [his] own pleading" but, instead, "'must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial.'"  *City of Fresno v. United States*, 709 F. Supp. 2d 934, 938–39 (E.D. Cal. 2010) (quoting *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007)). Furthermore, "[a] nonmovant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment."  *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009); *See also Byron v. Inst. for Envtl. Health, Inc.*, 428 F. Supp. 3d 467, 469 (W.D. Wash. 2019)

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

(quoting *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) ("Although the Court must reserve for the jury genuine issues regarding credibility, the weight of evidence, and legitimate inferences, the 'mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient' to avoid judgment.")).  Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus.*, 475 U.S. at 586 (internal citation and quotation omitted).

## IV.   DISCUSSION

### A. Discrimination

Plaintiff's first claim is for discrimination in violation of Title VII, 42 U.S.C. § 2000e–2(a).  During summary judgment, claims for discrimination are reviewed under the familiar *McDonnell Douglas* scheme. *Weil v. Citizens Telecom Servs. Co.*, LLC, 922 F.3d 993, 1002 (9th Cir. 2019) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Under this scheme, Plaintiff must first establish a prima facie case by showing that (1) he is a member of a protected class; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) his employer treated him differently than a similarly situated employee who does not belong to the same protected class. *Id.* at 1003; *see also Kennedy v. Bremerton Sch. Dist.*, 443 F. Supp. 3d 1223, 1242 (W.D. Wash. 2020).  If he is able to do so, the burden shifts to the Defendants to provide a "legitimate nondiscriminatory reason" for the alleged discriminatory action. *Kennedy*, 443 F. Supp. 3d at 1242.  If they are able to do so, the burden shifts back to Plaintiff to "demonstrat[e] that the [D]efendant[s'] reason is actually pretextual." *Id.*  In this case, there is no dispute that Plaintiff is a member of a protected class or that he experienced an adverse

10

employment action in his termination based on three CAMs.

Defendants claim they are entitled to summary judgment because Plaintiff is unable to establish the second (satisfactory work) and fourth (comparator) prongs of discrimination's prima facie requirement and, even if he is, he is unable to establish that the company's non-discriminatory reason for firing him, *i.e.* inability to follow management instruction, is pretextual.  Defs.' Mot. at 19–22.

Plaintiff claims he is entitled to summary judgment, arguing that Defendant's "fictitious corrective actions" demonstrate that he was treated differently than non-minority employees.  Pl.'s Mot. at 6.[3]  He claims that Defendants intentionally constructed barriers and provided him with false information when conducting his work designed to ensure that he failed as a pretext for his discriminatory termination.  *Id.* at 8–9.  He also claims that Mr. Dillaman intentionally rated him lower on his 2018 Performance Evaluation and terminated him despite the fact that he "met expectations" or "met some expectations" in all of the rated categories.  Pl.'s Resp. at 4–5.

### 1.   *Satisfactory Work*

In assessing whether an employee was satisfactorily performing his or her work, the employee "must produce evidence, not just pleadings or argument."  *Weil*, 922 F.3d at 1004.  In other words, "[a]n employee's self-assessment of his performance, though relevant, is not enough on its own to raise a genuine issue of material fact."  *Id.*; *see also Bradley v. Harcourt, Brace &*

---

[3] Plaintiff also claims that his termination was discriminatory because it came subsequent to his filing of a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Pl.'s Mot. at 7–8; *see also* Pl.'s Resp. at 7, 15.  This allegation sounds as a claim for retaliation, not discrimination, and the Court has already dismissed Plaintiff's retaliation claim with prejudice.  December 17 Order at 6–7; April 2 Order at 5–6.

*Co.*, 104 F.3d 267, 270 (9th Cir. 1996) ("an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact")).

Here, Defendants present a slew of evidence attesting to the fact that Plaintiff was insubordinate, uncooperative, and unable to perform the tasks assigned to him in a timely manner including three independent investigations by Human Resources and countless emails between coworkers documenting Plaintiff's combative behavior and inability to satisfactorily complete projects. Defendants also present an independent investigation of Plaintiff's complaints of an unfair work environment, which found no support for his claims. The Court has reviewed every email submitted by both parties and finds ample support for the proposition that Plaintiff was not satisfactorily performing his duties. *See, e.g.*, Simpkins Email.

Plaintiff offers no evidence outside of his own assertions that he was satisfactorily performing his duties. He presents no evidence that the tasks he was assigned were unreasonable or different from other Industrial Engineers. Further, he presents no evidence that his fellow Industrial Engineers were unable to complete the same tasks and assignments he did not complete which Defendants present as evidence of his inability to satisfactorily perform his duties. In fact, a later part of the Simpkins email evidences that other Industrial Engineers were often called on to complete work Plaintiff was unable to do. *See* Simpkins Email.

Additionally, while he claims the three CAMS were "fictitious," the email chains produced by Defendants amply support the independent investigations' conclusions. These emails also support Mr. Dillaman's performance evaluation, which found Plaintiff lacking in categories contingent on collaboration and collegiality. Simply put, Plaintiff has presented no evidence demonstrating a genuine dispute of fact as to whether he was satisfactorily performing his duties.

2.   *Comparator*

In order to raise an inference of discrimination, a Plaintiff must be able to identify "either (a) one or more valid comparators, or (b) other circumstances surrounding the adverse action that create an inference of discrimination." *McDaniels v. Grp. Health Co-op.*, 57 F. Supp. 3d 1300, 1311 (W.D. Wash. 2014).  In order to be valid, a comparator "must be similar to the plaintiff 'in all material respects'" except that they do not belong to the same protected class.  *Id.* (quoting *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006)).  When considering a comparator's fit, the Ninth Circuit looks to factors such as "whether the proposed comparator and the plaintiff were subject to the same policies, worked at the same jobs, committed similar violations, and had similar disciplinary records." *Id.* (international citations omitted).

Here, Plaintiff has produced no comparators and no "other circumstances."  As noted above, he fails to allege that other Industrial Engineers were unable to complete similar work assignments, leaving no evidence regarding his claim that Defendants intentionally constructed barriers to prevent him from completing his work.  He is also unable to point to other Industrial Engineers who exhibited the same intransigence towards management and constructive feedback but were not disciplined.  At its base, Plaintiff is unable to produce any evidence, except his own insistence, that the treatment he received at management's hands was based on his race.

3.   *Non-Discriminatory, Non-Pretextual Reason for Termination*

Based on the foregoing, Plaintiff has failed to establish a prima facie case of discrimination under the *McDonnell Douglas* scheme.  In the interest of comprehensiveness, the Court will examine Defendants' claim to a non-discriminatory, non-pretextual reason for Plaintiff's termination.

Defendants claim that the legitimate, non-discriminatory, non-pretextual reason for Plaintiff's termination was his insubordination, inability to follow directions, and inability to satisfactorily complete his work assignments. As evidence for these reasons, as discussed earlier, they present three CAMs resulting from independent investigations of Plaintiff's conduct as well as a host of emails from managers and colleagues. This suffices to establish Defendants' reason for Plaintiff's termination.

In order to establish pretext, a plaintiff must come forward with "specific, substantial evidence." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983). A plaintiff, however, may demonstrate pretext "either 'directly by persuading the court that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1022 (9th Cir. 2018) (quoting *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)); *see also Shokri v. Boeing Co.*, 311 F. Supp. 3d 1204, 1213 (W.D. Wash. 2018), *aff'd*, 777 F. App'x 886 (9th Cir. 2019). In other words, "[e]vidence of pretext may be direct or circumstantial," *Hotchkiss v. CSK Auto Inc.*, 918 F. Supp. 2d 1108, 1128 (E.D. Wash. 2013), and if direct evidence is available "very little . . . is sufficient," *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001). "[B]ut if circumstantial evidence is offered, such evidence has to be 'specific' and 'substantial.'" *Id.* (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998), *as amended* (Aug. 11, 1998)).

Plaintiff presents no direct evidence of pretext. Instead, he relies on his own subjective insistence that Defendants' proffered explanation is pretextual. This does not suffice to create a dispute of fact.

14

Based on this finding, and the finding that Plaintiff has failed to establish a prima facie case for discrimination, the Court will grant Defendants' Motion on this claim and deny Plaintiff's Motion.

**B. Harassment**

Plaintiff's next claim is for harassment, which in Title VII parlance constitutes a claim for hostile workplace environment based on his race.  To prevail on such a claim, a Plaintiff must show that "because of [his] race . . ., [he] was subjected to unwelcome conduct that was 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'"  *Campbell*, 892 F.3d at 1016 (quoting *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1161 (9th Cir. 2017)); *see also Perez v. U.S. Postal Serv.*, 76 F. Supp. 3d 1168, 1186–87 (W.D. Wash. 2015).  Such conduct must have been both "subjectively and objectively perceived as abusive."  *Campbell*, 892 F.3d at 1016.  When determining whether a work environment was hostile, the Court looks at "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Djitte v. Delta Glob. Serv.*, No. 19-cv-00480, 2020 WL 1689732, at *2 (W.D. Wash. Apr. 7, 2020) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)); *see also Campbell*, 892 F.3d at 1017 ("We consider all circumstances, with a particular focus on issues such as the frequency and severity of the conduct, whether the conduct was physically threatening or humiliating, and the extent to which it unreasonably interfered with Campbell's work performance.").

Defendants claim they are entitled to summary judgment because Plaintiff has failed to show he was subject to race-based conduct or that any of the conduct he complains of was

sufficiently severe or pervasive to alter the conditions of his employment.  Defs. Mot. at 22–28.

Plaintiff argues he is entitled to summary judgment because he claims there is no genuine dispute of fact that Boeing employees and management used derogatory and insulting terms directed at him.  Pl.'s Mot at 5.  For example, Plaintiff highlights the use of the term "problem child" in the Simpkins Email, *id.*, but also claims he was referred to as a "dog," "bulldog," "rat," a "carpet to be stepped on with approval of management," and a "slave worker."  Pl.'s Resp. at 13.  He also claims he was subject to false accusations of incompetence as a form of harassment.  Pl.'s Resp. at 10.  Finally, Plaintiff claims that Defendants harassed him when Mr. Dillaman forced him to sign a discriminatory performance evaluation.  Pl.'s Mot. at 7; *see also* Pl.'s Resp. at 6, 9, 14.

The Court finds that Plaintiff has failed to present sufficient evidence to raise a triable issue of fact that he was subject to a hostile work environment.  First, as it relates to his claim that being referred to as a "problem child" by Mr. Simpkins created a hostile work environment, it is clear from the context of the email that the term was not racially-based, but instead referred to the real and persistent issues Plaintiff's performance raised.  *See* Simpkins Email.  Plaintiff can point to no other instances in which he was referred to a as "problem child" let alone that the term was used in a racially derogatory way on other occasions.

As for the other terms Plaintiff alleges he was called, he provides no details of the circumstances of these events.  In an attempt to fill in these missing details, Defendants questioned Plaintiff about each term during his deposition.  Based on his answers, Defendants conclude— convincingly—that each term was not being used in a derogatory fashion as they were not based

16

on racial animus or often even directed at him.  *See* Defs.' Mot. at 16–17, 23.[4, 5]  For example, Defendants point out that the comment regarding "slaves" was uttered in a conversation Plaintiff was not a part of and was actually about "working the damn [assignment] until we break it" and that the two coworkers in conversation would need a "slave worker" to complete the assignment. *Id.* at 17 (citing Decl. of Emily A. Bushaw, Ex. 1, Dkt. No. 91 at 158:22–161:21).  Plaintiff admits that the speakers never mentioned his name or pointed at him, and that he merely assumed they were talking about him because they were talking nearby.  *Id.* at 160:18–20.  Plaintiff himself admits he did not report the incident because it was not clear the coworkers were talking about him.  *Id.* at 165:22–166:9.

Another example, "bulldog," Plaintiff stated in his deposition was used by two coworkers to describe his "resilience."  *Id.* at 140:2–143:3.  Thus, from the incident as described by Plaintiff in his deposition, the term's use had everything to do with his unyielding personality and nothing to do with his race.

Plaintiff offers nothing to contradict Defendants' version of events.  The exhibits he references in his brief as evidence do not contain the terms he alleges he was called.  *See* Pl.'s

---

[4] Plaintiff objects to the Court's consideration of his deposition because transcripts of the deposition were not made available to him until after the close of discovery and he was not provided an opportunity to review and approve the transcripts.  Pl.'s Resp. at 19.  Defendants assert that Plaintiff could have ordered his transcript on the day of his Deposition, and Plaintiff has not produced evidence to show this was not the case.  Defs.' Reply at 17.  Additionally, he does not claim that there are any inaccuracies within the transcript calling into question its authenticity.  As such, the Court denies this objection.

[5] Plaintiff appears to object to Defense counsel's taking of his deposition because "counsel does not have or has not demonstrated the required manufacturing/Industrial engineering credentials to discuss and understand the technical materials she used during the deposition."  Pl.'s Resp. at 19.  This argument is only presented in a heading, however, and there is no legal support or argumentation presented.  As such, the Court denies this objection.

Resp. at 13.[6]  As such, the Court finds that the exhibits fail to support his claims.  Without evidentiary support, Plaintiff merely continues to insist based on his own subjective belief that the terms were racially motivated and directed at him.  So much is not enough to create a genuine dispute of material fact.  *See Robertson v. Dodaro*, 767 F. Supp. 2d 185, 2011 WL 768111, at *7 (D.D.C. Mar. 7, 2011) ("It is the plaintiff's burden to provide evidence beyond his or her own subjective assertions of discrimination suggesting that a facially neutral term or phrase was, in fact, discriminatory.").

As for his claim that he was subject to false accusations of incompetence as a form of harassment, as mentioned earlier, Plaintiff produces no evidence other than his subjective belief in his competence that he was, in fact, competent.  *See supra* at 11–12.  This fails to create a dispute of fact.

Finally, Plaintiff's claim that he was forced to sign a derogatory performance evaluation as a form of harassment does not hold up in light of the facts presented.  First, as the Court has determined, the Performance Evaluation's conclusions were legitimate in the face of the evidence presented.  *See supra* at 12.  Furthermore, it is clear from the Performance Evaluation submitted

---

[6] This is a consistent issue with Plaintiff's briefing as both the exhibits he attached to his Motion for Summary Judgment, Dkt. No. 98-1, and to his Opposition, Dkt. No. 106-1, consist of one document, with 255 and 338 pages respectively, without an index or identifiable organizational scheme.  Often, the appendices within each file contain documents unrelated to each other and Plaintiff's in text citations do not serve to aid the reader in navigating to what exactly within each appendix he intends his reference to refer.  *See* Defs.' Opp'n to Pl.'s Mot., Dkt. No. 101 at 3 n.1 ("Defs.' Resp."); Defs.' Reply at 4, 4 n.2, 4 n.3, 5 n.5 (both complaining of the lack of organization and clear reference within Plaintiff's exhibits).  The Court has done its best to review the *pro se* Plaintiff's exhibits for the support he alleges, but the old adage that "Judges are not like pigs, hunting for truffles buried in briefs" applies. *Clark v. Chappell*, 936 F.3d 944, 982 (9th Cir. 2019) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam)); *see also Californians for Renewable Energy v. California Pub. Utilities Comm'n*, 922 F.3d 929, 935–36 (9th Cir. 2019) (quoting *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("On summary judgment, 'it is not our task . . . to scour the record in search of a genuine issue of triable fact.'").

to the Court that he was not forced to sign it, as his signature does not appear on it and it contains a note affirming the fact that he was not forced to sign.  *See* 2018 Performance Evaluation at 32.

The Court has found that Defendants have produced sufficient evidence to show that the criticism Plaintiff received regarding his work was legitimate and not based on his race.  For his part, Plaintiff has produced no evidence on which a trier of fact could conclude either that the criticism was unfounded or based on his race.  The Court, therefore, will grant Defendants' Motion and deny Plaintiff's Motion as to this claim.

**C. Defamation**

Plaintiff's final cause of action is for defamation.  Plaintiff claims that Defendants disseminated false facts when TALX informed Washington's ESD of the circumstances of Plaintiff's termination.  The Court has twice previously elaborated the elements of defamation, which require Plaintiff to establish (1) a false statement; (2) unprivileged publication; (3) fault; and (4) damages.  December 17 Order at 9; April 2 Order at 9 (both citing *Duc Tan v. Le*, 300 P.3d 356, 364 (Wash. 2013)).

Defendants argue that summary judgment on this claim is appropriate as the statements were both true and privileged.  Defs.' Mot. at 28–32.

Plaintiff claims that he is entitled to summary judgment on this claim because, according to Plaintiff, Defendants' allegations of incompetence proffered as grounds for his termination and TALX's reporting of those allegations to the ESD were false and defamatory.  Pl.'s Mot. at 9; Pl.'s

Resp. at 16–17.[7]

### 1. _Truth_

It is Plaintiff's burden to demonstrate the falsity of Defendants' statements.  *Seaquist v. Caldier*, 438 P.3d 606, 612 (Wash. Ct. App. 2019).  In order to do so, he must establish "either a statement was false or a statement left a false impression by omitted facts."  *Id.* (citing *Mohr v. Grant*, 108 P.3d 768, 773–74 (Wash. 2005)).  Under the applicable state law standard,

> [w]ith respect to falsity, Washington does not require a defamation defendant to prove the literal truth of every claimed defamatory statement.  A defendant need only show that the statement is substantially true or that the gist of the story, the portion that carries the sting, is true.  The sting of a report is defined as the gist or substance of a report when considered as a whole.

> *Mohr*, 108 P.3d at 775 (internal quotations and citations omitted); *see also Herron v. KING Broad. Co.*, 746 P.2d 295, 301 (Wash. 1987).

As established previously, Defendants have presented the results of four independent investigations which found that the conclusions of the CAMs were well founded and Plaintiff's complaints that they were unfairly levied were unfounded.  Plaintiff presents no evidence raising a dispute of fact that the CAMs or other information sent to TALX were false, outside of his subjective insistence that his performance was satisfactory.  *See supra* at 11–12.  Thus, Plaintiff has failed to present sufficient evidence to contradict the veracity of the reports disclosed by Boeing to TALX, entitling Defendants to summary judgment on this claim.

_____

[7] Plaintiff also claims that Defendants are liable for defamation based on false accusations that he attempted to extract corporate documents from his work computer after his termination.  Pl.'s Mot. at 9; Pl.'s Resp. at 10–11, 17.  Defendants note that an internal investigation into this matter was conducted after Plaintiff's termination as it was believed he committed a security breach, but the investigation cleared Plaintiff of any wrongdoing on this account.  Defs.' Resp. at 10.  Plaintiff presents no evidence that this incident was ever published, as all communications were conducted between Boeing employees and the incident was not disclosed by TALX to ESD.  *See id.*

2.   *Publication*

The Court also finds that Plaintiff has failed to establish publication.  The Court has already found that Boeing's communications with TALX constituted privileged, intracorporate communications and TALX's communication with ESD are immune from civil liability for defamation.  *See* December 17 Order at 9–10; April 2 Order at 9–11.  Thus, in order to establish a claim for defamation, Plaintiff must show that Boeing's communication with TALX was made with actual malice in order to overcome intercorporate privilege.  *See Armijo v. Yakima HMA, LLC*, 868 F. Supp. 2d 1129, 1139 (E.D. Wash. 2012) ("Intracorporate communications are not, however, absolutely privileged; the privilege may be lost if the employee publishes a defamatory statement to a co-employee not in the ordinary course of his or her work or if the employee made the statement with actual malice.").[8]

Actual malice exists when "a statement is made 'with knowledge of its falsity or with reckless disregard of its truth or falsity.'"  *Armijo*, 868 F. Supp. 2d at 1139 (quoting *Doe v. Gonzaga Univ.*, 24 P.3d 390, 398 (Wash. 2001).  "Reckless disregard" means a "high degree of awareness of . . . probable falsity" or "that the defendant in fact entertained serious doubts as to the statement's truth."  *Herron*, 746 P.2d at 301 (internal quotations and citations omitted).  When examining actual malice, the standard is subjective, "focusing on the defendant's belief in or attitude toward the truth of the statement, not the defendant's personal hostility toward the plaintiff."  *Id.*; *see also Herron*, 776 P.2d at 105 (reiterating standard for actual malice during

---

[8] The Court has already determined that Boeing's communications with TALX were made inside the ordinary scope of TALX's work.  April 2 Order at 10 n.6.

rehearing).

Based on the foregoing conclusions that Plaintiff has failed to raise a dispute of fact regarding veracity, Plaintiff has also failed to raise a dispute of fact regarding actual malice. *See supra* at 20. This failure entitles Defendants to summary judgment as to Plaintiff's defamation claim.

## V.    CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment.

DATED this 28th day of December, 2020.


BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE